MITCH RIKER, APPELLANT, v. JOSEPH C. VITEK, DIRECTOR OF CORRECTIONAL SERVICES, APPELLEE.

279 N. W. 2d 876

Filed June 12, 1979. No. 42349.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

KRIVOSHA, C. J.

This matter comes to us by reason of the appellant having filed an application for writ of habeas corpus in the District Court for Lancaster County, Nebraska. At the time of the filing of the application, the appellant was confined to the Nebraska Penal and Correctional Complex. Appellant maintained that he was being illegally and unlawfully confined to the Nebraska Penal and Correctional Complex in that when taking into account the accumulation of statutory good time, as provided by section 83-1,107, R. R. S. 1943, and meritorious good time, as provided by section 83-1,107.01, R. R. S. 1943, appellant had served his maximum sentence and should therefore be re-

leased. Further, the appellant claimed that the good time had been illegally taken from him without affording him the requisite due process and that the good time must therefore be considered in determining whether the appellant had, in fact, served his full sentence.

After hearing, the trial court concluded that, in fact, the appellant had not been afforded all of the necessary requirements set forth in the decision of the Supreme Court of the United States in the case of Wolff v. McDonnell, 418 U. S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935, in that appellant had not been advised that if his parole was revoked he might lose his good time as provided in sections 83-1,107 and 83-1,107.01, R. R. S. 1943. Therefore, the court ordered that unless appellant was granted an appropriate hearing on the question of the forfeiture of his good time within 30 days of the date of the court order, appellant should stand discharged. Appellant has appealed maintaining that in view of the court's finding that he was denied his due process, his release cannot be delayed and the defects cannot be cured by ordering a subsequent hearing.

We have now examined the record, scant as it may be, and have concluded that the trial court was in error in finding appellant's due process rights had been violated. As will be set out in further detail, the record discloses that appellant was afforded all of his required due process, and therefore we find the decision of the trial court should be reversed and the matter remanded with instructions to dismiss the application for a writ of habeas corpus.

The material facts in this case are virtually without dispute. The record discloses that appellant was originally sentenced to the Nebraska Penal and Correctional Complex by the District Court for Hall County, Nebraska, on September 17, 1975, for a term of 2 to 4 years on two counts of forgery. On July 6, 1977, the appellant was granted a parole, having

served his minimum sentence, taking into account the then earned good time. On September 30, 1977, appellant was charged with possession of stolen goods in the municipal court of Lincoln, Nebraska, and did then enter a plea of guilty to the charge. On October 6, 1977, a preliminary hearing was held to determine whether probable cause existed to revoke the appellant's parole. At that time probable cause was determined to exist and the appellant was ordered to a further hearing.

Exhibit 4 was offered in evidence without objection. It consists of a letter from the Board of Parole to the Director of the Department of Correctional Services, and sets out in detail much of the facts as we have related them here. The letter of October 18, 1977, (exhibit 4) recites that a further hearing was held on October 18, 1977, at which time it was the unanimous vote of the Board of Parole to revoke appellant's parole and recommend forfeiture of good time awarded him, pursuant to the provisions of sections 83-1,107 and 83-1,107.01, R. R. S. 1943. The letter further discloses that the documents which the Board of Parole used in making its decision to revoke parole were enclosed with exhibit 4 when it was delivered to the Director of the Department of Correctional Services. Moreover, at the hearing held in the District Court for Lancaster County, Nebraska, on August 28, 1978, appellant admitted that he had received notice of a parole revocation hearing, presumably the one held on October 18, 1977.

Under the provisions of sections 83-1,107 and 83-1,107.01, R. R. S. 1943, an offender, while in the custody of the Board of Parole, may suffer the forfeiture of good time previously received after the offender has been consulted *regarding the charges of misconduct or breach of the conditions of his parole.* In addition, the Board of Parole may recommend to the Director of Correctional Services that good time be forfeited.

Following the hearing on the revocation of appellant's parole, appellant took no further action and was returned to the Nebraska Penal and Correctional Complex where he proceeded to again serve his sentence. When he had concluded serving that time which he computed was sufficient, taking into account all of the good time previously earned, he filed his application for a writ of habeas corpus.

Appellant does not maintain that he did not receive due process with regard to the hearing on whether his parole should be revoked or on the question of whether his misconduct was sufficiently serious to result in the revocation. His complaint, rather, is that he was never advised or made aware of the provisions of sections 83-1,107 and 83-1,107.01, R. R. S. 1943, and therefore he was denied his due process as required by the Supreme Court of the United States in the McDonnell decision.

We have carefully read the McDonnell case, as well as the following two decisions of the Supreme Court of the United States in the parole, probation, and good-time trilogy. Morrissey v. Brewer, 408 U. S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484; Gagnon v. Scarpelli, 411 U. S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656. A careful reading of those three decisions fails to disclose any legal support for appellant's position.

The McDonnell case was not a case involving the revocation of parole or probation. Rather, McDonnell was a class action brought by inmates of the Nebraska Penal and Correctional Complex maintaining their civil rights were being violated in that their good time was being taken away without them being afforded an opportunity for a hearing on whether *the misconduct* was sufficiently serious as to justify such disciplinary action. The reason for that result was due to the fact the State had previously promulgated rules concerning discipline within the Nebraska Penal and Correctional Complex. Not all misconduct by a prisoner resulted in the revocation

of good time. Only that misconduct which was determined to be serious misconduct might result in the revocation of good time.

In McDonnell the Supreme Court of the United States, speaking through Mr. Justice White, specifically found: "Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether *such behavior* has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed." (Emphasis supplied.)

It should be kept in mind and we note, however, that what the United States Supreme Court was addressing was a hearing to determine the *seriousness of the misconduct* and not the ultimate revocation of good time.

In the McDonnell case the inmates were arguing that the requirements of the Morrissey case were likewise required to be followed in the McDonnell situation. The United States Supreme Court, however, rejected that contention, saying: "We agree with neither petitioners nor the Court of Appeals: the Nebraska procedures are in some respects constitutionally deficient but the Morrissey-Scarpelli procedures need not in all respects be followed in disciplinary cases in state prisons."

The United States Supreme Court then concluded the McDonnell decision by decreeing that in disciplinary hearings within the Nebraska Penal and Correctional Complex the following due process must be afforded a prisoner: (1) Advance written notice of charges must be given to the disciplinary action inmate no less than 24 hours before his appearance before the adjustment committee; (2) there must be a "written statement" by the fact finders as to the evidence relied on and reasons for the disciplinary action; (3) the inmate should be allowed to call witnesses and present documentary evidence in his de-

fense if permitting him to do so will not jeopardize institutional safety or correctional goals; (4) the inmate has no constitutional right to confrontation and cross-examination in prison disciplinary proceedings, such procedures in the current environment, where prison disruption remains a serious concern, being discretionary with the prison officials; and (5) inmates have no right to retained or appointed counsel in such proceedings, although counsel substitutes should be provided in certain cases.

Nowhere in the McDonnell decision is there any indication that either a separate hearing or a combined hearing must be held as to the penalties to be imposed. The hearing which must be held under the McDonnell decision is with regard to the *seriousness of the misconduct*. The record in this case makes it quite clear that a full and adequate hearing with regard to the seriousness of the misconduct, to wit, pleading guilty to a charge of possession of stolen property while on parole, was in fact held, notice was given, and a written report made.

While both the Morrissey and Scarpelli decisions involve situations more closely akin to the case at bar, to wit, revocation of parole and revocation of probation, they likewise make no requirement for a specific notice or hearing with regard to the ultimate penalties to be imposed. Morrissey held that before one's liberty could be taken and his parole revoked, certain minimal due process requirements need be met. They were: (1) A written notice of the claimed parole violation; (2) disclosure to the parolee of evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or

lawyers; and (6) a written statement by the fact-finders as to the evidence relied on and the reasons for revoking the parole. Again, there is no indication in the Morrissey case that a specific hearing on the penalty must be held. Once the seriousness of the misconduct has been disposed of and the individual has been afforded his minimal due process with regard to that determination, then the remaining statutory provisions may properly be imposed.

Numerous cases can be found wherein the courts of all jurisdictions have held that under the applicable good-time statutes, the grant or denial of an allowance of credits for good conduct is discretionary with the proper authorities and constitutes a matter of grace rather than a matter of right. For a detailed collection of these cases, see 95 A. L. R. 2d 1265. Nothing in either the Morrissey, Scarpelli, or McDonnell decisions has in any way affected those determinations.

Nowhere in this record has the appellant, who has the burden of proving he is being illegally or unlawfully detained, presented evidence to show such to be the case. Appellant has made no argument nor produced any evidence that the hearing with regard to the revocation of his parole was in any manner in violation of his due process rights or the requirements of Morrissey, Scarpelli, and McDonnell. His claim as noted originally is simply that no one told him he would lose his good time, if it were found that his misconduct was serious. We are unable to find, nor has any authority been cited to us, wherein such a requirement exists. The statutes of the State of Nebraska grant the Board of Parole absolute discretion with regard to forfeiting, withdrawing, or restoring good time when it is determined that misconduct has occurred. It appearing therefore that the appellant did, in fact, receive all of his required due process and he is not therefore being illegally or unlawfully detained, his application for a writ of ha-

beas corpus should have been denied. See Pruitt v. Parratt, 197 Neb. 854, 251 N. W. 2d 179. Accordingly, the judgment of the trial court is hereby reversed with directions to dismiss the application of the appellant.

REVERSED AND REMANDED WITH
INSTRUCTIONS.