VINCENT J. MALONE, JR., APPELLEE AND CROSS-APPELLANT, V.
CHARLES L. BENSON, DIRECTOR, DEPARTMENT OF
CORRECTIONAL SERVICES, ET AL., APPELLANTS AND
CROSS-APPELLEES.
BARRY LEE ABBOTT ET AL., APPELLEES, V. CHARLES L. BENSON,
DIRECTOR, DEPARTMENT OF CORRECTIONAL SERVICES,
APPELLANT.
361 N.W.2d 184

Filed January 4, 1985.
Nos. 84-193, 84-265, 84-266, 84-267, 84-268, 84-269, 84-270, 84-271, 84-272.

Paul L. Douglas, Attorney General, and Sharon M. Lindgren, for appellants.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos, Special Deputy Public Defender, for appellees, and Vincent J. Malone, Jr., pro se.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Each of these consolidated appeals presents to the court once again questions concerning the proper interpretation of Nebraska "good time" laws. See Neb. Rev. Stat. §§ 83-1,107, 83-1,107.01, and 83-1,123 (Reissue 1981). Specifically, the questions presented are: (1) Upon revocation of an offender's parole, is all of the offender's good time automatically forfeited as a result of such revocation? and (2) If revoked, can such good time ever be restored?

The cases involved herein began in two different ways. Case No. 84-193 (*Malone*) began as a habeas corpus action but was later amended to seek declaratory relief. The remaining eight cases, Nos. 84-265 through 84-272 (*Abbott*), tried to a different district judge, were initially brought as declaratory judgment actions. In *Malone* the district judge concluded that good time earned pursuant to § 83-1,107 (mandatory good time) and § 83-1,107.01 (meritorious good time) was not automatically forfeited when an offender's parole was revoked. In *Abbott* the district judge concluded that good time forfeited upon revocation of parole could later be restored at the discretion of the chief executive officer of the facility where the offender was held, subject to the approval of the director of the Department of Correctional Services. The cases were then consolidated for briefing and argument to this court. We believe that the decision of the district judge in each case was correct, and for that reason the judgments in all cases are affirmed.

The district judge in *Malone* observed:

> It is unfortunate that there is so much uncertainty surrounding the entire area of the good time laws. Such provisions should be definite, unambiguous and easy to compute. When those trained and experienced in the law find it difficult to ascertain the true meaning of these statutes, one can understand the frustration of those to whom they apply.

Having been called upon to interpret good time laws in Nebraska with some regularity, we are in sympathy with the views expressed by the district judge. Unfortunately, the confusion arises from more than one area. In part, the statutes themselves are not as clear and concise as they might be.

Occasionally, the same words are used with an intent that they mean different things.

The confusion in these matters begins with § 83-1,123, which in pertinent part reads as follows:

> (1) A parolee whose parole is revoked shall: (a) Be recommitted for the remainder of his maximum prison term, deducting the period served on parole prior to the violation; and (b) be treated as an escaped prisoner until apprehended and returned to the Department of Correctional Services.

The Attorney General, at the request of the director of the Department of Correctional Services, interpreted § 83-1,123(1) to mean that when a parole was revoked, all of the parolee's "good time" earned to that date was automatically forfeited, that once forfeited it could not be restored, and that the parolee was required to serve the remainder of his *maximum prison term* without regard to any good time earned prior to the date of revocation pursuant to either § 83-1,107 or § 83-1,107.01. The Attorney General understandably reached that conclusion because of language contained in the case of *Lytle v. Vitek*, 203 Neb. 825, 280 N.W.2d 654 (1979). In *Lytle, supra* at 828, 280 N.W.2d at 656, we said:

> That statute [§ 83-1,123] specifically deals with a parolee whose parole is revoked. It requires that such a prisoner be recommitted for the remainder of his maximum prison term, deducting *only* the period served on parole prior to the violation. The statute by its terms establishes a new prison term, *wiping out any previous credits except for discretionary reparole.*

(Emphasis supplied.) That language in the opinion was dicta.

On further reflection, as we read § 83-1,123, we find it to mean that absent any other statute, specifically §§ 83-1,107 and 83-1,107.01, and absent any other action which may be imposed, one whose parole is revoked is to be recommitted for the balance of his maximum term. Section 83-1,123, however, does not exist in a vacuum. While the term "maximum term" is earlier defined in the act, see Neb. Rev. Stat. § 83-170(4) (Reissue 1981), it is obvious that the use of the phrase "maximum prison term" is merely a starting point from which

the time that an offender must be in custody, either by incarceration or by parole, is computed. While the *Lytle* opinion indicated that "a prisoner [must] be recommitted for the remainder of his maximum prison term, deducting only the period served on parole prior to the violation," § 83-1,123 does not contain the word "only." "Only" was supplied by the court, and not by the statute.

Furthermore, it is apparent that the term "maximum term" as defined by § 83-170(4) does not absolutely define the time when an offender must be released from custody. Section 83-170(4) reads as follows: "Maximum term shall mean the maximum sentence provided by law or the maximum sentence imposed by a court, whichever is shorter." While that seems fairly clear on its face, anyone familiar with the laws regarding prison terms knows that neither a judge nor an offender can know with certainty the day upon which the offender will be released from custody when he is sentenced, notwithstanding the fact that the judge has imposed a "maximum term." The reason for this is that there are other statutes which impact upon that term. Those statutes must be read in connection with § 83-1,123. " 'It is the duty of the court, as far as practicable, to give effect to the language of a statute and to reconcile the different provisions of it so they are consistent, harmonious, and sensible.' " *State v. Black*, 195 Neb. 366, 367-68, 238 N.W.2d 231, 233 (1976). See, also, *Van Patten v. City of Omaha*, 167 Neb. 741, 94 N.W.2d 664 (1959). Further, the fundamental rule in construing statutes is that they shall be construed in pari materia and from their language as a whole to determine the intent of the Legislature. All subordinate rules are mere aids in reaching this fundamental determination. *Imus v. Bead Mountain Ranch, Inc.*, 183 Neb. 343, 160 N.W.2d 171 (1968).

Sections 83-1,107 and 83-1,107.01 are two statutes which must be read with § 83-1,123. Section 83-1,107 imposes upon the chief executive officer of a facility the obligation to reduce all sentences for good behavior in accordance with the schedule set out therein. The total of the reductions are then credited in two ways: (1) against the offender's minimum term, to determine the date of the offender's eligibility for release on

parole; and (2) against the offender's maximum term, to determine the date when the offender's discharge from the custody of the State becomes mandatory.

Section 83-1,107.01 provides that "[i]n addition to the reductions provided in section 83-1,107 [mandatory good time], an offender shall receive, for faithful performance of his assigned duties, a further reduction . . . ." This is what is oftentimes referred to as "meritorious good time." Unlike mandatory good time, which is deducted from both the minimum and the maximum terms, meritorious good time is only deducted from the maximum term, thereby further advancing the date of the offender's ultimate date of discharge from custody, even though the maximum term imposed by the court remains the same.

Both §§ 83-1,107 and 83-1,107.01 grant to the chief executive officer of the facility, subject to the approval of the director of the Department of Correctional Services, the right to forfeit, withhold, and restore either mandatory good time or meritorious good time.

If, then, § 83-1,123 is read together with the provisions of §§ 83-1,107 and 83-1,107.01, as it must be, we believe that one must reach the conclusion that the revocation of parole and recommitment to a facility does nothing more than return the offender to a facility to serve "his maximum prison term," however that is ultimately computed. The offender is required to return to the facility to serve the balance of his maximum term in the same manner as he was initially ordered to the facility by the trial court to serve his maximum term. Both terms are subject to statutory credits. It might have been better if a phrase other than "maximum prison term" had been used in § 83-1,123. That, however, does not change either the meaning or the effect of § 83-1,123 as it relates to § 83-1,107 or § 83-1,107.01.

Section 83-1,123 further provides that in addition to receiving credit for the time the offender has already served prior to parole while in the facility, he is to receive credit toward ultimate discharge for time on parole prior to revocation. In neither instance, when the offender is initially sentenced or when his parole is revoked, is any mention made of § 83-1,107

or § 83-1,107.01. By the same token, however, nothing in § 83-1,107 or § 83-1,107.01 gives any indication that the statutes are not to apply in the case of a parole revocation. If that was the intention of the Legislature, it was not so provided, and it is not the province of this court to read into the statutes words which are not there in order to fill alleged gaps. See *State v. Havorka*, 218 Neb. 367, 355 N.W.2d 343 (1984).

Sections 83-1,107 and 83-1,107.01 are clear and unambiguous. They provide that in *every* instance an offender is subject to the forfeiture, withholding, and restoration provisions of §§ 83-1,107 and 83-1,107.01 without regard to whether the offender is in a facility or on parole. They likewise unequivocally and without ambiguity grant to the chief executive officer of the facility, when the offender is in a facility, or the parole administrator, when the offender is on parole, the initial authority to forfeit, withhold, and restore both mandatory good time and meritorious good time. Nothing is said anywhere about automatic revocation. To the extent that our decision in *Lytle v. Vitek*, 203 Neb. 825, 280 N.W.2d 654 (1979), is to the contrary, it is overruled. Neither mandatory good time earned pursuant to § 83-1,107 nor meritorious good time earned pursuant to § 83-1,107.01 is automatically forfeited upon revocation of parole. Such forfeiture must occur upon either the recommendation of the chief executive officer of the facility to which the offender is entrusted or the parole administrator, depending upon who has custody at the time of revocation, subject to approval of the director of the Department of Correctional Services. Once forfeited or withheld, good time credits may be restored to the offender in like manner. The decisions of both district judges were correct in that regard.

One further point is deserving of comment as we attempt to set out the manner in which good time laws are to be administered. In the case of *Riker v. Vitek*, 203 Neb. 719, 279 N.W.2d 876 (1979), we correctly observed that the Board of Parole may *recommend* to the Director of Correctional Services that good time be forfeited. This was in connection with an offender who was in the custody of the Board of Parole. That statement was correct and reflected the language of §§ 83-1,107(3) and 83-1,107.01(3). In concluding the opinion

we said: "The statutes of the State of Nebraska grant the Board of Parole absolute discretion with regard to forfeiting, withdrawing [sic], or restoring good time when it is determined that misconduct has occurred." *Riker v. Vitek, supra* at 726, 279 N.W.2d at 880. That statement is not correct and should be disregarded. The Board of Parole merely has the right to make *recommendation* when the offender is in the custody of the Board of Parole. The discretion referred to by statute vests solely in the chief executive officer of the facility when the offender is in the custody of the Department of Correctional Services and in the parole administrator when the offender is in the custody of the Board of Parole, in each instance subject to the approval of the director of the Department of Correctional Services.

Appellee Malone has filed a cross-appeal raising issues involving equal protection. In view of our disposition of the case, we need not consider the cross-appeal. The decision of each of the district courts is in all respects affirmed.

AFFIRMED.