PERRY WOUNDED SHIELD, APPELLEE, V. FRANK O. GUNTER,
DIRECTOR, NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES,
APPELLANT.

405 N.W.2d 9

Filed May 1, 1987.   No. 86-747.

Robert M. Spire, Attorney General, and Sharon M. Lindgren, for appellant.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos, Special Deputy Lancaster County Public Defender, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Perry Wounded Shield, an inmate in the custody of the Nebraska Department of Correctional Services (DCS), filed a declaratory judgment action to determine whether DCS, in recomputing a mandatory parole date for Wounded Shield, had authority to withhold credit for Wounded Shield's meritorious good time earned before Wounded Shield violated his mandatory parole. The district court for Lancaster County decided that Wounded Shield was entitled to restoration of his meritorious good time, notwithstanding violation of

mandatory parole.

After conviction for attempted rape, Wounded Shield, on January 22, 1973, was sentenced to a term of imprisonment for not less than 5 years nor more than 15 years in the state penitentiary. Pursuant to Neb. Rev. Stat. § 83-1,111 (Cum. Supp. 1972), Wounded Shield was granted a discretionary parole on March 23, 1978, which he violated on May 13, 1978, resulting in revocation of his parole and reincarceration in the penitentiary. Wounded Shield's second discretionary parole was granted on February 20, 1980, and, on account of a subsequent parole violation on June 18, 1980, was revoked. At May 1, 1982, Wounded Shield had earned a credit for good behavior, namely, 4 years 5 months and 5 days, and had earned an additional credit of 1 year 4 months and 17 days for meritorious behavior during incarceration. See Neb. Rev. Stat. § 83-1,107(1) (Cum. Supp. 1974). As the result of a reduction of sentence due to credits, both good behavior and meritorious behavior, Wounded Shield was granted a mandatory parole on May 1, 1982. See § 83-1,111(5).

While on mandatory parole, Wounded Shield was convicted of attempted theft and, on February 13, 1984, was sentenced to 1 year in the penitentiary, which sentence was consecutive to Wounded Shield's initial sentence for attempted rape. On February 14, 1984, Wounded Shield was reincarcerated in the state penitentiary. Wounded Shield's mandatory parole was revoked, after a hearing before the Board of Parole on February 21, 1984. Pursuant to Neb. Rev. Stat. § 83-1,123 (Cum. Supp. 1974), Wounded Shield was reincarcerated in the penitentiary for the remainder of his initial prison term on the attempted rape charge. In recomputing Wounded Shield's maximum sentence and determining a new mandatory parole date in view of the consecutive sentence imposed for the theft conviction, DCS withheld any credit for meritorious good behavior earned by Wounded Shield before revocation of his mandatory parole. Wounded Shield has received credit for good and meritorious behavior following revocation of his mandatory parole.

In his petition for declaratory judgment, Wounded Shield sought restoration of good time credit withheld by DCS after

revocation of his mandatory parole and requested determination of a new mandatory parole date. Frank O. Gunter, the director of DCS, answered, alleging that Wounded Shield, as a result of his violation of mandatory parole, had lost or forfeited all credit for meritorious behavior concerning his initial sentence. The district court relied on § 83-1,107(2), which states in part: "No reduction of an offender's term for especially meritorious behavior or exceptional performance of his duties shall be forfeited or withheld after an offender is released on parole," and found that Wounded Shield was entitled to restoration of 1 year 4 months and 17 days as a credit for meritorious good time earned before revocation of mandatory parole. The director of DCS has appealed, claiming that "the District Court erred when it held that meritorious good time earned prior to parole cannot be withheld upon a parole revocation."

Both parties acknowledge, and we concur, that this case is governed by the good time statutes in existence at Wounded Shield's initial sentencing in 1973. See Neb. Rev. Stat. §§ 83-170 to 83-1,135 (Reissue 1971, Cum. Supp. 1972 & Cum. Supp. 1974) (1969 Neb. Laws, ch. 817, §§ 1 to 65 and § 85, pp. 3072 to 3104 and 3112 (L.B.1307), amended by 1972 Neb. Laws, L.B. 1499). In 1975 the good time statutes were amended by L.B. 567, which changed the provisions concerning credit for good time and the effect of such good time on parole and eventual discharge from custody, see Neb. Rev. Stat. §§ 83-1,107 and 83-1,107.01 (Reissue 1981), and which was discussed and analyzed in *Lytle v. Vitek*, 203 Neb. 825, 827, 280 N.W.2d 654, 655 (1979):

> Until 1969 good-time credits were applied to reduce the maximum term of a sentence and the statutes required discharge from custody rather than release on parole when time limits had been met. From 1969 until 1975 the statutes continued to provide for discretionary parole but provided for mandatory release on parole rather than the mandatory discharge from custody required by prior and subsequent statutes. In 1975 the statutes basically returned to the pre-1969 system and the statutes now have no provision for mandatory parole but instead require

discharge from custody when the time served in custody and on parole equals the maximum term, less all good-time reductions granted.

Thus, L.B. 567, enacted in 1975 after imposition of the initial sentence on Wounded Shield, is inapplicable to the case before us. As we expressed in *Boston v. Black*, 215 Neb. 701, 712, 340 N.W.2d 401, 408 (1983): "Application of those L.B. 567 provisions to offenders first sentenced prior to its effective date is impermissible, under the Constitution of this state, without Board of Pardons approval." See, also, *Johnson & Cunningham v. Exon*, 199 Neb. 154, 256 N.W.2d 869 (1977). In *Lytle v. Vitek, supra*, we expressed that a prisoner, sentenced when L.B. 1307 was in effect, could not rely on statutes reflected in L.B. 1307, which were repealed by L.B. 567 in 1975. To the extent that we so held in *Lytle*, that case is overruled. For a review and discussion of the good time statutes contained in L.B. 1307 and the changes effected by enactment of L.B. 567, see *Boston v. Black, supra*.

The sole issue in this case is whether a prisoner's meritorious good time credit, earned pursuant to § 83-1,107(1) (Cum. Supp. 1974) and before release on mandatory parole, may be withheld after revocation of mandatory parole. In *Brown v. Sigler*, 186 Neb. 800, 802, 186 N.W.2d 735, 736 (1971), we stated that "the reductions provided for [in § 83-1,107] are used to determine eligibility for release on parole or supervision, and they are subject to forfeiture." See, also, *Von Bokelman v. Sigler*, 186 Neb. 378, 183 N.W.2d 267 (1971).

It is helpful to examine the statutes pertaining to credit for good behavior, release of a prisoner on parole, and revocation of such parole. The Nebraska Treatment and Corrections Act is contained in §§ 83-170 to 83-1,135 of the Nebraska Revised Statutes. Section 83-1,107 (Cum. Supp. 1974) states in part:

(1) . . . In addition, for especially meritorious behavior or exceptional performance of his duties, an offender *may* receive a further reduction, *for parole purposes*, not to exceed five days, for any month of imprisonment. . . .

. . . .

(2) Reductions of such terms may be forfeited, withheld and restored by the chief executive officer of the facility

after the offender has been consulted regarding the charges of misconduct. No reduction of an offender's term for especially meritorious behavior or exceptional performance of his duties shall be forfeited or withheld after an offender is released on parole.

(Emphasis supplied.) Section 83-1,111 (Cum. Supp. 1972) states in part:

(5) If the board fixes no earlier release date, a committed offender's release on parole shall become mandatory at the expiration of his maximum term of imprisonment, less good time reductions allowed in accordance with the provisions of this act, or three months prior to discharge, whichever is earlier. Nothing herein shall require the mandatory parole of an offender who has violated a discretionary parole within twelve months of the date when his parole would otherwise be mandatory.

Section 83-1,114 (Reissue 1971) states in part:

(1) Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

(a) *there is a substantial risk that he will not conform to the conditions of parole;*

. . . .

(2) In making its determination regarding a committed offender's release on parole, the Board of Parole shall take into account each of the following factors:

. . . .

(j) The offender's prior criminal record, including the nature and circumstances, recency and frequency of previous offenses;

. . . .

(l) . . . [W]hether any reductions of term have been forfeited, and whether such reductions have been restored at the time of hearing or reconsideration;

(m) *The offender's behavior and attitude during any previous experience of probation or parole and the recency of such experience . . . .*

(Emphasis supplied.) Section 83-1,115 (Reissue 1971) states in

part: "Before making a determination regarding a committed offender's release on parole, the Board of Parole shall consider the following: . . . (2) *All official reports of his prior criminal record, including reports and records of earlier probation and parole experiences . . . .*" (Emphasis supplied.) Section 83-1,121 (Reissue 1971) states: "A committed offender while on parole shall remain in the legal custody and control of the Board of Parole. The board may at any time revoke the parole of an offender or recommit him to the custody of the Division of Corrections, with or without cause." Section 83-1,123 (Cum. Supp. 1974) states in part:

> (1) A parolee whose parole is revoked shall: (a) Be recommitted for the remainder of his maximum prison term, deducting the period served on parole prior to the violation . . . .
>
> . . . .
>
> (3) A parolee whose parole has been revoked shall be considered by the Board of Parole for reparole at any time in the same manner as any other committed offender eligible for parole.

Wounded Shield argues that a literally strict construction of § 83-1,107(2) controls in this case so that meritorious good time can never be forfeited or withheld, once a prisoner has been released on parole. The director of DCS argues that strict application of § 83-1,107(2), as suggested by Wounded Shield, would render futile other statutes giving DCS control over parolees and that "mandatory parole for all practical purposes would become discharge" from control of DCS. Brief for Appellant at 13-14. In substance, the director of DCS contends that, under § 83-1,111(5), a person who has violated mandatory parole is not entitled to remain on parole, and, correspondingly, meritorious good time credit, which has been granted at the discretion of the chief executive officer of a DCS facility, may be forfeited or withheld.

Although a penal statute is required to be strictly construed, such statute should be given a sensible construction with its general terms limited in construction and application to prevent injustice, oppression, or an absurd consequence. See *State v. Holtan*, 197 Neb. 544, 250 N.W.2d 876 (1977).

" 'It is the duty of the court, as far as practicable, to give effect to the language of a statute and to reconcile the different provisions of it so they are consistent, harmonious, and sensible.' " . . . Further, the fundamental rule in construing statutes is that they shall be construed in pari materia and from their language as a whole to determine the intent of the Legislature. All subordinate rules are mere aids in reaching this fundamental determination.

*Malone v. Benson*, 219 Neb. 28, 31, 361 N.W.2d 184, 187 (1985). See, also, *State v. Black*, 195 Neb. 366, 238 N.W.2d 231 (1976).

As a series or collection of statutes pertaining to a certain subject matter, statutory components of an act, which are in pari materia, may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. See, *State v. Nichols*, 167 Neb. 144, 91 N.W.2d 308 (1958); *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477 (1976). See, also, *Anderson v. Peterson*, 221 Neb. 149, 375 N.W.2d 901 (1985); *Tom & Jerry, Inc. v. Nebraska Liquor Control Commission*, 183 Neb. 410, 160 N.W.2d 232 (1968). Thus, the various sections of the Nebraska Treatment and Corrections Act must be read in the light of one another. See *State v. Golgert*, 223 Neb. 950, 395 N.W.2d 520 (1986), wherein this court held that statutes contained in the Nebraska Rules of the Road must be read in conjunction with one another.

Applying the foregoing rules of statutory construction, we do not adopt Wounded Shield's unduly restrictive construction of § 83-1,107.

Under § 83-1,121, the Board of Parole retains control over parolees and, on proper revocation of parole, may recommit a parole violator to the custody of DCS. If meritorious good time credits could not be forfeited or withheld after revocation of a mandatory parole, the Board of Parole would be powerless to recommit a parole violator, since previously accumulated credit for meritorious behavior would automatically entitle the parole violator to immediate release through another mandatory parole, thereby effectively nullifying the Board of Parole's

power for reincarceration after violation and revocation of a mandatory parole. As a consequence of indefeasible or nonforfeitable credit for meritorious behavior, every DCS facility would have a correctional revolving door which affords a violator of mandatory parole immediate reentry into a societal environment without inducement to perform the provisions prescribed for parole. Such a prospect contravenes the purposes and objectives of a parole system. The Legislature could not have intended such an absurdly incongruous result. It would be equally incongruous to recognize DCS' authority to withhold mandatory parole of a person who has violated parole during the 12 months preceding prospective release on mandatory parole, see § 83-1,111(5), which may necessitate withholding meritorious good time, and simultaneously deny DCS' authority to withhold mandatory parole and meritorious good time, after a parolee had violated mandatory parole. " 'When the literal enforcement of a statue would result in absurdity, the courts will assume that such consequences were not intended.' " *State v. Black, supra* at 368, 238 N.W.2d at 233.

Wounded Shield's interpretation of § 83-1,107 would transform mandatory parole into a mandatory discharge from custody of the State. Such extreme and unreasonable interpretation of the Nebraska Treatment and Corrections Act is unwarranted. See *Von Bokelman v. Sigler*, 186 Neb. 378, 183 N.W.2d 267 (1971).

Under the scheme of § 83-1,107, meritorious good time is granted solely at the discretion of the chief executive officer of the DCS facility and is used solely to determine eligibility for parole and the date on which parole becomes mandatory. Under § 83-1,107, meritorious good time cannot be withheld or forfeited while a parolee is on release from custody of DCS. However, such good time may be withheld or forfeited while a prisoner is confined in a DCS facility, including confinement after revocation of parole, provided that the inmate has been consulted regarding the charge of misconduct which is the basis for withholding or forfeiting credit for good time. This construction of § 83-1,107 avoids an absurd consequence and is harmonious with the provisions and purposes of the Nebraska

Treatment and Corrections Act. A parole violator recommitted to custody of DCS, after revocation of mandatory parole, may be considered for subsequent parole under the provisions of §§ 83-1,114 and 83-1,115. See § 83-1,123(3).

After a hearing before the Board of Parole, Wounded Shield's mandatory parole was revoked, and he was recommitted to the custody of DCS to serve the balance of the maximum prison term consequent to the consecutive sentences. It was within DCS' statutory authority to withhold Wounded Shield's meritorious good time on recomputation of the maximum sentence imposed on Wounded Shield. We hold that, pursuant to the Nebraska Treatment and Corrections Act, as such existed at the time of Wounded Shield's initial sentence, credit for meritorious behavior which had been earned before Wounded Shield's release on mandatory parole may be forfeited or withheld, after reincarceration for violation of mandatory parole. The district court erred in finding that Wounded Shield was entitled to have his meritorious good time restored. For this reason, we reverse the judgment of the district court and remand these proceedings with direction to enter judgment consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTION.