DONALD L. JOHNSON, JR., APPELLANT, V. RON BARTEE ET AL.,
APPELLEES.
JOHNNY BOSTON, APPELLANT, V. GARY GRAMMER ET AL.,
APPELLEES.
421 N.W.2d 439

Filed April 1, 1988.   Nos. 87-105, 87-106.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos, Special Deputy Public Defender, for appellants.

Robert M. Spire, Attorney General, and Elaine A. Catlin, for appellees.

BOSLAUGH, CAPORALE, and GRANT, JJ., and MULLEN, D.J., and COLWELL, D.J., Retired.

GRANT, J.

Donald L. Johnson, appellant in case No. 86-105, brought a habeas corpus action, pro se, seeking his release from the custody of defendants-appellees (collectively referred to herein as DCS, that is, Department of Correctional Services) on the ground that DCS had failed to give him proper credit, after Johnson violated parole, for "especially meritorious behavior or exceptional performance of his duties" (Neb. Rev. Stat. § 83-1,107(1) (Cum. Supp. 1974)). Johnson had earned the credits before he was released on parole on July 19, 1979.

Johnny Boston, appellant in case No. 86-106, sought the same relief, pro se, in a habeas corpus action, for the same reason. Since both cases involve the application of the good time statutes to offenders' terms of incarceration, the cases

were consolidated in this court for briefing and argument, and this opinion will control both cases.

Some difficulty is presented in each case in determining the exact thrust of each appellant's position, because the petitions were filed pro se. Counsel was later appointed for the hearings in the trial court and on this appeal.

The record in the *Johnson* case contains the following stipulation of facts:

[O]n December 27, 1972, the petitioner began serving a sentence of not less than five years nor more than fifteen years following his conviction of assault with intent to inflict bodily injury. On that sentence, he served 51 days of jail time credit.

On July 19, 1979, the petitioner was granted a discretionary parole. At the time that this discretionary parole was granted to the petitioner, his mandatory parole date, taking into account good time and the jail time credit was October 24, 1982.

On March 1, 1982, the petitioner was charged with violating the discretionary parole and this parole was revoked by the Nebraska Parole Board on April 5, 1982. At the time of the revocation of his parole, the petitioner's mandatory parole date was October 25, 1982. In calculating that mandatory parole date, the plaintiff had credit for ten months and three days of earned good time or meritorious good time.

Johnson's habeas corpus hearing was held on January 7, 1987. In that hearing, an official timesheet containing the computations of DCS relating to Johnson's prison sentence was stipulated into evidence. This computation sheet showed a full discharge date included the 10 months 3 days of meritorious good time which Johnson had accumulated prior to his discretionary parole on July 19, 1979. The trial court denied Johnson's writ, holding that Johnson had violated his discretionary parole and that meritorious good time in the fact situation of the *Johnson* case did not have to be credited to him.

The record of the habeas corpus proceedings of the second appellant, Johnny Boston, showed the following. Boston was sentenced in Douglas County District Court on October 29,

1970, to 10 to 15 years for robbery. Boston received a discretionary parole on August 17, 1978. At the time Boston was granted his discretionary parole, he had a mandatory parole date of October 23, 1979. Boston had accumulated 11 months 11 days of meritorious good time at the time of his discretionary parole.

This discretionary parole was determined to be delinquent as of March 20, 1979, and revoked on September 8, 1980. The record shows that at some time during this parole Boston served a sentence in the State of California. The record also shows that on August 12, 1985, Boston was sentenced to a 1-year sentence for escape, to be served consecutively. The board determined that Boston lost his meritorious good time. The parties have agreed that if this meritorious good time were restored, Boston would be immediately entitled to a discharge.

Appellants assign three errors: (1) The trial court's judgment was contrary to law and not supported by sufficient evidence; (2) The trial court erred in failing and refusing to comply with the statutory language of § 83-1;107(2), which guaranteed to each appellant that his meritorious good time would not be forfeited or withheld after he was released on parole; and (3) The trial court erred in failing to follow, apply, and observe the simple, direct, and specific language of the applicable statute. We hold appellants' contentions are not correct, and affirm the order of the trial court in each case.

Read together, the three assignments of error are encompassed in one fundamental issue which must be resolved. The issue involves interpreting the interaction between § 83-1,107(2) and Neb. Rev. Stat. § 83-1,111(5) (Cum. Supp. 1974). With regard to these statutes, appellant Johnson asks this court to reexamine the issue presented in *Wounded Shield v. Gunter*, 225 Neb. 327, 405 N.W.2d 9 (1987), and determine whether meritorious good time can be used "solely" for determining parole eligibility or whether such time could also be used to determine the date of a prisoner's absolute discharge.

In *Boston v. Black*, 215 Neb. 701, 340 N.W.2d 401 (1983), we held that, absent approval of the Board of Pardons, the good time sentence reduction provisions of 1975 Neb. Laws, L.B. 567, are not applicable to an offender who started to serve his

sentence prior to the effective date of L.B. 567, which was August 24, 1975. Since appellants were sentenced in December of 1972 and October of 1970 respectively, we must apply the statutory scheme in force at that time. Counsel for both parties states the effective statutes are contained in the cumulative supplement of 1974. See § 83-1,107(3).

We first examine the then-applicable statutes. Section 83-1,107 states in part:

> (1) The chief executive officer of a facility shall reduce, for parole purposes, for *good behavior and faithful performance of duties* while confined in a facility the term of a committed offender as follows: Two months on the first year, two months on the second year, three months on the third year, four months for each succeeding year of his term and pro rata for any part thereof which is less than a year. *In addition, for especially meritorious behavior or exceptional performance of his duties*, an offender may receive a further reduction, for parole purposes, not to exceed five days, for any month of imprisonment. The total of all such reductions shall be deducted:
>
> (a) From his *minimum term*, to determine the date of his eligibility for release on parole; and
>
> (b) From his *maximum term*, to determine the date when his release on *parole becomes mandatory* under the provisions of section 83-1,111.
>
> (2) Reductions of such terms may be forfeited, withheld and restored by the chief executive officer of the facility after the offender has been consulted regarding the charges of misconduct. *No reduction of an offender's term for especially meritorious behavior or exceptional performance of his duties shall be forfeited or withheld after an offender is released on parole.*

(Emphasis supplied.)

Some parts of this statute are of particular importance to resolution of the instant case. First, subsection (1) provided for two distinct, separately defined types of good time: (1) "good behavior and faithful performance of duties" and (2) "especially meritorious behavior or exceptional performance of his duties." In *Boston v. Black, supra*, we labeled the former

as "regular good time" and the latter as "meritorious good time." The phrase "good time" refers to both regular and meritorious good time. We will use these labels in these cases.

The distinction between meritorious and regular good time is important in interpreting the second sentence of subsection (2). Appellants concede, and we agree, that regular good time could be forfeited and withheld at any time, provided statutory procedures were followed. This was not true for meritorious good time. Subsection (2) stated that meritorious good time could not be forfeited or withheld after an offender was released on parole. Appellants argue that this language was controlling throughout the parole procedure.

In § 83-1,107, descriptions of discretionary parole and mandatory parole were set out. The time and interval during which a discretionary parole could be granted was bounded by the earliest discretionary parole date (minimum sentence less the sum of regular and meritorious good time) on one end and the mandatory parole date (maximum sentence less regular and meritorious good time) on the other. This resulted in three distinct periods during an offender's sentence: (1) sentencing to the date on which discretionary parole became available; (2) the period during which discretionary parole was available (discretionary parole date to mandatory parole date); and (3) the period after mandatory parole date but before final discharge date.

In *Wounded Shield v. Gunter*, 225 Neb. 327, 405 N.W.2d 9 (1987), the parole was violated during the third period, the mandatory parole period. Appellants in the instant cases, however, violated discretionary paroles and were therefore in the second period. If a discretionary parole were violated during this second period *and* the violation occurred within 12 months of the mandatory parole date, then an additional statute came into play. Section 83-1,111(5) provided: "Nothing herein shall require the mandatory parole of an offender who has violated a discretionary parole within twelve months of the date when his parole would otherwise be mandatory."

Appellants argue that *Wounded Shield*, rather than harmonizing § 83-1,107(2) with the other good time statutes, in effect judicially repealed § 83-1,107(2). Such a contention is

incorrect. Section 83-1,107(2) was controlling during the period between the date discretionary parole became available and the date 12 months before mandatory parole. During this period of discretionary parole, meritorious good time could not have been forfeited after an offender was released on parole.

During the 12 months immediately preceding the mandatory parole date, § 83-1,111(5) controlled the granting or withholding of good time credits, not § 83-1,107(2). At that time, without the existence of § 83-1,111(5), § 83-1,107(2) would admittedly control. However, § 83-1,111(5) did exist, and it served to preempt the control of § 83-1,107(2) for the 12-month period prior to mandatory parole date. We hold § 83-1,111(5) is a specific statute and § 83-1,107(2) is a general statute. In that situation, the general statute yields to the special. *State v. Havorka*, 218 Neb. 367, 355 N.W.2d 343 (1984).

Our holding in *Wounded Shield* controls the period from the mandatory parole date to the date of mandatory discharge. *Wounded Shield* does not control the cases before us. The offender in *Wounded Shield* violated a mandatory rather than a discretionary parole. Thus, in the instant cases, § 83-1,111(5) controls.

Section 83-1,107(1) clearly stated that good time, both regular and meritorious, is subtracted from the maximum term for "parole purposes." The statute did not provide that such good time had to be applied for purposes of reducing the maximum term. The second sentence of § 83-1,111(5) stated that "Nothing herein shall require the mandatory parole of an offender who has violated a discretionary parole within twelve months of the date when his parole would otherwise be mandatory." This language was controlling in stating that meritorious good time could be withheld during the period which is 12 months prior to the mandatory parole date. However, appellants are now nearing their maximum term and question whether the meritorious good time remains in existence for purposes of computing their discharge date. Appellants argue that this good time remains in existence and that § 83-1,107(2) is controlling.

This argument failed to acknowledge the fundamental

definition which was set forth in § 83-1,107(1). Under that statute, good time, by definition, existed only for parole purposes at the time of appellants' sentencing. Good time is defined by statute and thus is controlled by the statutes which confer it. Appellants, Johnson and Boston, both violated their discretionary paroles within 1 year of their mandatory parole dates. Section 83-1,111(5) controlled this period of their sentences. DCS acted within its statutory authority in withholding appellants' meritorious good time in each case.

AFFIRMED.