Bernard Delaney McCree, Jr. v. State of Maryland, No. 20, September Term, 2014

**TRADEMARK COUNTERFEITING – FACIAL OVERBREADTH – FACIAL VAGUENESS –** Court of Appeals held that Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) § 8-611 is neither facially overbroad nor facially void-for-vagueness.

Circuit Court for Queen Anne's County
Case No. 17-K-10-007592

Argued: November 6, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 20

September Term, 2014

_____

BERNARD DELANEY MCCREE, JR.

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Watts, J.

_____

Filed: December 18, 2014

We decide whether Maryland's trademark counterfeiting statute, Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR") § 8-611—which prohibits, among other things, the willful display of goods that have "retail value" and bear a counterfeit mark—is facially overbroad or facially void-for-vagueness. Analyzing CR § 8-611's plain language, we hold that CR § 8-611 is neither facially overbroad nor facially void-for-vagueness.

## BACKGROUND

The State, Respondent, charged Bernard Delaney McCree, Jr. ("McCree"), Petitioner, with numerous crimes, including violating CR § 8-611. In the Circuit Court for Queen Anne's County ("the circuit court"), McCree moved to dismiss the charges for violating CR § 8-611 on the ground that CR § 8-611 is unconstitutional, arguing that the statute is facially overbroad and facially void-for-vagueness. The circuit court denied the motion to dismiss.

At trial, a trooper of the Maryland State Police testified that, during a traffic stop of a vehicle that McCree had been driving, 206 DVDs were found in the vehicle. Dennis Supik, an investigator with the Content Protection Office of the Motion Picture Association of America, testified as an expert in the field of the identification of counterfeit DVDs that all 206 DVDs contained "numerous counterfeit marks" and thus were "counterfeit reproductions" of movies on DVD. On his own behalf, McCree testified that he was a licensed vendor whom the State had authorized to sell the DVDs; McCree denied that he had manufactured the DVDs or that he knew whether the DVDs were counterfeit.

A jury convicted McCree of violating CR § 8-611. The circuit court sentenced McCree to ten years' imprisonment, with all but one year suspended, for the violation of

CR § 8-611, consecutive to other sentences, followed by three years of supervised probation. McCree appealed, and the Court of Special Appeals affirmed. See McCree v. State, 214 Md. App. 238, 76 A.3d 400 (2013). McCree filed a petition for a writ of *certiorari*, which this Court granted. See McCree v. State, 436 Md. 501, 83 A.3d 779 (2014).

## DISCUSSION

## I.

McCree contends that CR § 8-611 is facially overbroad because it criminalizes conduct that the Free Speech Clause of the First Amendment to the United States Constitution protects. Specifically, McCree argues that CR § 8-611 broadly applies to the display or distribution of goods (such as signs or pamphlets) that include trademarked words or labels, terms, devices, designs, or words that are not registered with any government entity. McCree asserts that CR § 8-611 is substantively identical to a previous version of Pennsylvania's trademark counterfeiting statute, which the Supreme Court of Pennsylvania struck down as overbroad. The State responds that CR § 8-611 is not facially overbroad because it applies only to goods that a defendant intends to sell, and thus is distinguishable from the previous version of Pennsylvania's trademark counterfeiting statute. In reply, McCree contends that CR § 8-611 applies to goods that a defendant displays or distributes, even if the defendant does not intend to sell the goods; and, alternatively, even if CR § 8-611 applies only to goods that a defendant intends to sell, the Free Speech Clause protects such commercial speech.

An appellate court reviews without deference a trial court's conclusion as to whether

a statute is unconstitutional.  See generally Corbin v. State, 428 Md. 488, 498, 52 A.3d 946, 951 (2012) ("[W]e review the ultimate question of constitutionality de novo[.]" (Citation omitted)).  In interpreting a statute, a court first considers the statute's language, which the court applies where the statute's language "is unambiguous and clearly consistent with the statute's apparent purpose[.]"  State v. Weems, 429 Md. 329, 337, 55 A.3d 921, 926 (2012) (citation omitted).

An overbroad statute criminalizes conduct that the Free Speech Clause of the First Amendment to the United States Constitution[1] protects.  See Grayned v. City of Rockford, 408 U.S. 104, 114-15 (1972) ("A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct . . . . The crucial question . . . is whether the ordinance sweeps within its prohibitions what may not be punished under the First . . . Amendment[]."  (Footnote omitted)).

Even if a statute is not overbroad as applied to a particular defendant's actions, the defendant may contend that the statute is facially overbroad "because of a judicial prediction or assumption that the statute's very existence may" chill third parties' speech. Hill v. Colorado, 530 U.S. 703, 731-32 (2000) (citation omitted).  Such a facial challenge succeeds if and only if "the statute is substantially overbroad"—i.e., there is "a realistic danger that the statute [] will significantly compromise" third parties' speech.  N.Y. State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 11 (1988) (citation and internal quotation

---

[1]"Congress shall make no law . . . abridging the freedom of speech[.]"  U.S. Const. amend. I.  The Free Speech Clause applies to the States.  See Grosjean v. Am. Press Co., 297 U.S. 233, 243 (1936) ("[T]he [S]tates are precluded from abridging the freedom of speech . . . by force of the due process clause of the Fourteenth Amendment.").

marks omitted); see also United States v. Williams, 553 U.S. 285, 292 (2008) ("[A] statute's overbreadth [must] be substantial . . . relative to the statute's plainly legitimate sweep." (Citations and emphasis omitted)).

CR § 8-611 states, in relevant part:

(a) *Definitions*. — (1) In this section the following words have the meanings indicated.
    (2) "Counterfeit mark" means:
        (i) an unauthorized copy of intellectual property; or
        (ii) intellectual property affixed to goods knowingly sold, offered for sale, manufactured, or distributed, to identify services offered or rendered, without the authority of the owner of the intellectual property.
    (3) "Intellectual property" means a trademark, service mark, trade name, **label, term, device, design, or word adopted or used by a person to identify the goods or services of the person**.
    (4) "Retail value" means:
        (i) a trademark counterfeiter's selling price for the goods or services that bear or are identified by the counterfeit mark; or
        (ii) a trademark counterfeiter's selling price of the finished product, if the goods that bear a counterfeit mark are components of the finished product.
    (5) "Trademark counterfeiter" means a person who commits the crime of trademark counterfeiting prohibited by this section.

(b) *Prohibited*. — A person may not willfully **manufacture, produce, display, advertise, distribute, offer for sale, sell, or possess with the intent to sell or distribute** goods or services that the person knows are bearing or are identified by a counterfeit mark.

(c) *Penalty — Value at least $1,000*. — If the aggregate retail value of the goods or services is $1,000 or more, a person who violates this section is guilty of the felony of trademark counterfeiting[.]

(d) *Penalty — Value less than $1,000*. — If the aggregate retail value of the goods or services is less than $1,000, a person who violates this section is guilty of the misdemeanor of trademark counterfeiting[.]

\* \* \*

(g) *Evidence of trademark or trade name*. — State or federal registration of intellectual property is prima facie evidence that the intellectual property is a trademark or trade name.

(Emphasis added).

Reviewing CR § 8-611 and the applicable authorities, we conclude that CR § 8-611 is not facially overbroad. Read in its entirety, CR § 8-611 criminalizes the "display [or] distribut[ion of] goods . . . that . . . bear[] or are identified by a counterfeit mark[,]" CR § 8-611(b), only if the goods have "retail value[.]" CR § 8-611(c), (d). Specifically, by their plain language, the penalty provisions delineate that, "[i]f the aggregate retail value of the goods . . . is $1,000 or more, [the defendant] is guilty of [a] felony[,]" CR § 8-611(c), and, "[i]f the aggregate retail value of the goods . . . is less than $1,000, [the defendant] is guilty of [a] misdemeanor[.]" CR § 8-611(d). "Retail value" means a "selling price[.]" CR § 8-611(a)(4)(i), (ii). In other words, CR § 8-611 does not criminalize the display or distribution of goods that have no retail value and are not meant to be sold. Accordingly, CR § 8-611 does not criminalize conduct that the Free Speech Clause indisputably protects—for example, the mere display of signs or distribution of pamphlets.

Our conclusion is supported by the doctrine of *noscitur a sociis* ("it is known from its associates"), under which "the meaning of a word is . . . known from the accompanying words so that . . . general and specific words, capable of analogous meaning, when associated together, take color from each other, so that general words are restricted to a sense analogous to less general[.]" Emmert v. Hearn, 309 Md. 19, 25, 522 A.2d 377, 380-81 (1987) (citation omitted). CR § 8-611 criminalizes the "manufacture, produc[tion], display, advertise[ment], distribut[ion], offer[ing] for sale, [sale], or possess[ion] with the

intent to sell or distribute goods or services that [a defendant] knows are bearing or are identified by a counterfeit mark." CR § 8-611(b). Six of the eight types of conduct that CR § 8-611 criminalizes—manufacture, production, advertisement, offering for sale, sale, and possession with the intent to sell or distribute—directly relate to commercial acts or purposes. Viewed in context with these six other types of conduct, "display" and "distribute" obviously also relate to commercial acts or purposes.

Indeed, in another statute, titled "Infringement," that, like CR § 8-611, protects trademarks (specifically, by establishing an express private right of action for the misappropriation of trademarks), "display" is one of multiple types of conduct that directly relate to commercial acts or purposes. See Md. Code Ann., Bus. Reg. (1992, 2010 Repl. Vol.) ("BR") § 1-414(c) ("A [trademark's] registrant may sue to enjoin the **display, manufacture, sale**, or use of a reproduction or colorable imitation of a mark of the registrant." (Emphasis added)); see also Mid S. Bldg. Supply of Md., Inc. v. Guardian Door and Window, Inc., 156 Md. App. 445, 460, 847 A.2d 463, 471-72 (2004) (In a trademark infringement case, under BR § 1-414, "the moving party must show . . . that the defendant's use of the mark occurred in commerce[.]" (Citations omitted)). Simply put, it would lead to an incongruous result to interpret "display" and "distribute" to relate to noncommercial acts or purposes (such as the mere display of signs or distribution of pamphlets) where the six other types of conduct that CR § 8-611 criminalizes directly relate to commercial acts or purposes. A court must give a statute "a reasonable interpretation, not one that is absurd, illogical[,] or incompatible with common sense." Walker v. State, 432 Md. 587, 615, 69 A.3d 1066, 1083 (2013) (citation and internal quotation marks

omitted).

We reject McCree's contention that CR § 8-611 applies to goods that a defendant does not intend to sell. In support of his contention, McCree points out that CR § 8-611(b) (the subsection that prohibits trademark counterfeiting) does not mention "retail value." In attempting to downplay the significance of CR § 8-611(c) and (d) (the penalty provisions, which incorporate "retail value"), McCree essentially asks us to disregard the rule of statutory interpretation that a court considers a "statutory scheme in its entirety rather than segmenting the statute and analyzing only its individual parts." Haile v. State, 431 Md. 448, 470, 66 A.3d 600, 612-13 (2013) (citations and internal quotation marks omitted). We decline to disregard this well-established rule. That CR § 8-611(c) and (d) are penalty provisions does not change the circumstance that they are part of CR § 8-611, and must be considered in interpreting CR § 8-611.[2]

In support of his contention that CR § 8-611 applies to goods that a defendant does not intend to sell, McCree relies on the circumstance that the bill file of Senate Bill 410, 1996 Reg. Sess., 1996 Md. Laws Ch. 582 ("Senate Bill 410")—which became Md. Code Ann., Art. 27 § 48A, which is CR § 8-611's predecessor—contains copies of trademark counterfeiting bills from California and North Carolina.[3] Specifically, McCree points out

---

[2]We are unpersuaded by McCree's contention that CR § 8-611 applies to goods that have a retail value of zero, which is "less than $1,000[.]" CR § 8-611(d). CR § 8-611(a)(4)(i) and (ii) define "retail value" as a "selling price[.]" Thus, CR § 8-611 applies only to goods that have a selling price, which must be more than zero.

[3]Senate Bill 410's bill file also contains copies of trademark counterfeiting bills from Florida and New York, but those bills do not support McCree's position. Florida's trademark counterfeiting bill would apply only to the "vending" of counterfeit goods or to

that, in drafting CR § 8-611's predecessor, the General Assembly chose not to use language from the trademark counterfeiting bills from California and North Carolina. California's trademark counterfeiting bill would apply only to "willfully manufactur[ing], intentionally sell[ing], or knowingly possess[ing] for sale" a counterfeit mark. S.B. 862, 1993-1994 Reg. Sess., 1993 Cal. Legis. Serv. Ch. 703. North Carolina's trademark counterfeiting bill would apply only to counterfeit marks on goods that are "intended for sale[.]" H.B. 311, 1995 Reg. Sess., 1995 N.C. Laws Ch. 436. To be sure, in drafting CR § 8-611's predecessor, the General Assembly chose not to use specific language from the trademark counterfeiting bills from California and North Carolina. That said, the General Assembly did not need to include such language; instead, the General Assembly drafted CR § 8-611's predecessor so that it (like CR § 8-611) applied only to goods that had a "selling price[.]" Md. Code Ann., Art. 27 § 48A(A)(4)(I), (II); CR § 8-611(a)(4)(i), (ii). Plainly put, CR § 8-611 is not overbroad simply because the General Assembly did not copy-and-paste the trademark counterfeiting bills from California and North Carolina.

McCree's contention that CR § 8-611 is substantively identical to a previous version of Pennsylvania's trademark counterfeiting statute, which the Supreme Court of Pennsylvania struck down as overbroad in <u>Commonwealth v. Omar</u>, 981 A.2d 179, 189

---

counterfeit marks that have "a retail sale value[.]" C.S.H.B. 1591, 14th Leg., 1st Reg. Sess., 1995 Fla. Sess. Law Serv. Ch. 95-300. Thus, in this regard, Florida's trademark counterfeiting bill is substantively identical to CR § 8-611 and its predecessor. New York's trademark counterfeiting bill would apply to the mere "possess[ion of] a trademark knowing it to be counterfeit for the purpose of affixing it to any goods." A. 12124, 215th Leg., 1992 Sess. Law News of N.Y. Ch. 490. Thus, in this regard, CR § 8-611 and its predecessor are much narrower than New York's trademark counterfeiting bill.

(Pa. 2009) is not persuasive. The previous version of Pennsylvania's trademark counterfeiting statute criminalized the "display[]" or "distribut[ion]" of "items" that bore, 18 Pa. Cons. Stat. § 4119(a) (1996), "[i]ntellectual property . . . without the authority of the owner of the intellectual property." 18 Pa. Cons. Stat. § 4119(i) (1996). Nothing in the previous version of Pennsylvania's trademark counterfeiting statute, including its penalty provision, required an intent to sell or a selling price. See 18 Pa. Cons. Stat. § 4119(c)(1) (1996) ("Except as provided in paragraphs (2) and (3), a violation of this section constitutes a misdemeanor of the first degree."). By contrast, as discussed above, CR § 8-611 applies only to goods that have a "selling price[.]" CR § 8-611(a)(4)(i), (ii). Tellingly, since Omar, 981 A.2d 179, Pennsylvania's legislature has amended Pennsylvania's trademark counterfeiting statute so that it applies only where a defendant "inten[ds] to sell or to otherwise transfer for purposes of commercial advantage or private financial gain[.]" 18 Pa. Cons. Stat. § 4119(a) (2010).

The parties are correct in agreeing that CR § 8-611 applies to labels, terms, devices, designs, or words that are not registered with any government entity. It is accurate that nothing in CR § 8-611 requires that the labels, terms, devices, designs, or words at issue be registered with any government entity. Indeed, CR § 8-611(g) ("State or federal registration of intellectual property is prima facie evidence that the intellectual property is a trademark or trade name.") indicates that the labels, terms, devices, designs, or words at issue need not be registered with any government entity.

That said, we disagree with McCree's position that CR § 8-611 is facially overbroad because it applies to unregistered labels, terms, devices, designs, or words. In assessing

McCree's contentions concerning vagueness, the Court of Special Appeals determined that, "[s]ubsections (a)(3) and (g), taken together, convince us that a fair reading of the statute is that a person's use of a 'term' or 'word' is criminally actionable [] if the word or term used has been registered or is subject to registration by a third party." McCree, 214 Md. App. at 256, 76 A.3d at 410. This point is equally well taken in an overbreadth analysis. At the federal level, 15 U.S.C. § 1051(a)(3) provides that, in an application for use of a trademark, the applicant must specify that, among other things, "the person making the verification believes that he or she . . . to be the owner of the mark sought to be registered[,]" and that "to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such person, to cause confusion, or to cause mistake, or to deceive[.]" Similarly, BR § 1-406(c)(8) provides that an application for registration of a mark must contain a statement that "the applicant owns the mark[,]" "another person does not have the right to use the mark in the State[,]" and "the mark is not deceptively similar to a mark that another person has a right to use in the State." As such, the requirements for federal and State registration of a trademark are consistent with the definitions of counterfeit mark and intellectual property as set forth in CR § 8-611. So, although CR § 8-611 does not explicitly require registration, we agree with the Court of Special Appeals that CR § 8-611 describes labels, terms, devices, designs, or words that would be subject to federal or State registration as trademarks.

More importantly, to violate the Free Speech Clause, a statute's alleged overbreadth

must be substantial relative to what the statute may constitutionally prohibit. See Williams, 553 U.S. at 292; Galloway v. State, 365 Md. 599, 640, 781 A.2d 851, 875 (2001). It is undisputed that individuals and businesses depend on trademarks "to identify" their goods and services "and to distinguish them from" others' goods and services. BR § 1-401(c)(1), (2). Thus, the exclusive right to use a trademark "is a valuable property right[.]" Dodds v. Shamer, 339 Md. 540, 549, 663 A.2d 1318, 1322 (1995) (citations and internal quotation marks omitted). It is extremely doubtful that in modern times with the ability to register a trademark so well-known that a substantial number of individuals or businesses use unregistered labels, terms, devices, designs, or words to identify their goods or services; and it is even more doubtful that the number of instances in which people misappropriate such unregistered labels, terms, devices, designs, or words is substantial relative to the number of instances in which people misappropriate registered labels, terms, devices, designs, or words. See Williams, 553 U.S. at 292 ("[A] statute's overbreadth [must] be substantial . . . relative to the statute's plainly legitimate sweep." (Citations and emphasis omitted)); Galloway, 365 Md. at 640, 781 A.2d at 875 (same).

McCree contends that even if the terms "goods" and "services" refer only to items that are purveyed for commercial purposes, "that fact would not resolve the First Amendment concerns, for commercial speech, too, is protected by the" Free Speech Clause. McCree's contention is wrong. Although the Free Speech Clause partially protects commercial speech, that protection has never been interpreted as applying to criminal or unlawful activity. In Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 749-50, 770 (1976), a case involving a statute that banned the advertisement

of prescription drug prices by licensed pharmacists, the Supreme Court held that "commercial speech, like other varieties, is protected," but that "[s]ome forms of commercial speech regulation are surely permissible." The Supreme Court "mention[ed]" a few forms of permissible commercial speech regulation "to make clear that they are not before [the Court] and therefore are not foreclosed by this case." Id. at 770. One such example was as follows: "[T]here is no claim that the transactions proposed in the forbidden advertisements are themselves illegal in any way." Id. at 772 (citations omitted). After listing several examples, the Supreme Court concluded: "What is at issue is whether a State may completely suppress the dissemination of concededly truthful information about **entirely lawful activity**, fearful of that information's effect upon its disseminators and its recipients. Reserving other questions, we conclude that the answer to this one is in the negative." Id. at 773 (emphasis added) (footnote omitted). Later, in Posadas de P.R. Associates v. Tourism Co. of P.R., 478 U.S. 328, 330, 340 (1986), a case involving "the facial constitutionality of a Puerto Rico statute and regulations restricting advertising of casino gambling aimed at the residents of Puerto Rico[,]" the Supreme Court squarely held that "commercial speech receives a limited form of First Amendment protection so long as it concerns **a lawful activity** and is not misleading or fraudulent." (Emphasis added).

Thus, to be sure, McCree is correct that the Free Speech Clause partially protects commercial speech. It is readily apparent, nonetheless, from Va. State Bd. of Pharmacy and Posadas de P.R. Associates that this protection does not extend to commercial speech concerning illegal activity, such as the sale or display of counterfeit items in violation of CR § 8-611. Stated otherwise, regulation of commercial speech concerning illegal activity

- 12 -

is entirely permissible and does not infringe upon any protections provided by the Free Speech Clause. In short, selling or displaying counterfeit items intended for sale, while perhaps commercial activity, is unlawful activity that the Free Speech Clause does not protect.

For the above reasons, we hold that CR § 8-611 is not facially overbroad. As the Court of Special Appeals concluded, the circuit court was correct in determining that CR § 8-611 is not facially overbroad.

**II.**

McCree contends that CR § 8-611 is facially void-for-vagueness because CR § 8-611(a)(3)'s definition of "intellectual property," which is incorporated into CR § 8-611(a)(2)'s definition of "counterfeit mark," "is almost limitless" because it includes any "label, term, device, design, or word adopted or used by a person to identify the goods or services of the person." The State responds that CR § 8-611 is not facially void-for-vagueness because CR § 8-611(a)(3) clearly defines "intellectual property."

A statute is void-for-vagueness where the statute's "prohibitions are not clearly defined[,]" thus violating the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[4] City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289

---

[4]"No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV § 1. "[T]he void for vagueness doctrine addresses at least two . . . due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." F.C.C. v. Fox Television Stations, Inc., 132 S. Ct. 2307, 2317 (2012) (citation omitted)); see also Galloway, 365 Md. at 615-16, 781 A.2d at 860 ("[W]hen considering the void-for-

(1982) (citation, emphasis, and internal quotation marks omitted); see also Galloway, 365

Md. at 614, 781 A.2d at 860 ("[A]n enactment is void for vagueness if its prohibitions are

not clearly defined." (Quoting Grayned, 408 U.S. at 108)). A statute's prohibitions are

not clearly defined where people "of common intelligence must necessarily guess at [the

statute's] meaning and differ as to [the statute's] application[.]" F.C.C. v. Fox Television

Stations, Inc., 132 S. Ct. 2307, 2317 (2012) (citation omitted); see also Galloway, 365 Md.

at 615, 781 A.2d at 860 ("The standard for determining whether a statute provides fair

notice is whether persons of common intelligence must necessarily guess at the statute's

meaning." (Brackets, citation, and internal quotation marks omitted)). People of common

intelligence need not guess at a statute's meaning "if the meaning of the words in

controversy can be fairly ascertained by reference to judicial determinations, the common

law, dictionaries, treatises or even the words themselves, if they possess a common and

---

vagueness doctrine, courts consistently consider two criteria or rationales. The first
rationale is the fair notice principle that persons of ordinary intelligence and experience be
afforded a reasonable opportunity to know what is prohibited, so that they may govern their
behavior accordingly . . . . The second . . . rationale exists to ensure that criminal statutes
provide legally fixed standards and adequate guidelines for police, judicial officers, triers
of fact and others whose obligation it is to enforce, apply and administer the penal laws."
(Citations and internal quotation marks omitted)).

     Even if a statute is not void-for-vagueness as applied to a particular defendant's
actions, the defendant may contend that the statute is facially void-for-vagueness where the
statute may criminalize conduct that the Free Speech Clause protects. See United States v.
Nat'l Dairy Products Corp., 372 U.S. 29, 36 (1963) ("[I]n cases arising under the First
Amendment[,] we are concerned with the vagueness of the statute 'on its face' because
such vagueness may in itself deter constitutionally protected . . . conduct." (Citations
omitted)); Ayers v. State, 335 Md. 602, 624, 645 A.2d 22, 33 (1994) ("Where[ a] statute
appears to impinge upon fundamental constitutional rights such as the First Amendment
guarantees of free speech and assembly, the statute is tested for vagueness on its face
because its indefiniteness may have a chilling effect on the exercise of First Amendment
liberties." (Citation omitted)).

generally accepted meaning." Id. at 615, 781 A.2d at 860 (citations, emphasis, and internal quotation marks omitted). "[A] statute does not become unconstitutionally vague merely because it may not be perfectly clear at the margins. In other words, the vagueness doctrine does not require absolute precision or perfection." Id. at 634, 781 A.2d at 871 (citations and internal quotation marks omitted).

Applying these authorities to this case, we conclude that CR § 8-611 is not facially void-for-vagueness. CR § 8-611 criminalizes the "manufacture, produc[tion], display, advertise[ment], distribut[ion], offer[ing] for sale, [sale], or possess[ion] with the intent to sell or distribute goods or services that [a defendant] knows are bearing or are identified by a counterfeit mark." CR § 8-611(b). A "counterfeit mark" is "an unauthorized copy of intellectual property[,]" CR § 8-611(a)(2)(i), or "intellectual property affixed to goods knowingly sold, offered for sale, manufactured, or distributed, to identify services offered or rendered, without the authority of the owner of the intellectual property." CR § 8-611(a)(2)(ii). "Intellectual property" is "a trademark, service mark, trade name, label, term, device, design, or word adopted or used by a person to identify the goods or services of the person." CR § 8-611(a)(3). CR § 8-611(a)(3) makes clear that "intellectual property" is something that is adopted or used by a person to identify the person's goods or services. CR § 8-611's prohibitions of certain acts involving "intellectual property" are clearly defined, and there is no need to guess at CR § 8-611's meaning or differ as to CR § 8-611's application.

We are unpersuaded by McCree's reliance on "the last antecedent rule" for the contention that, in CR § 8-611(a)(3), "adopted or used by a person to identify the goods or

services of the person" applies only to "word." Under the last antecedent rule, "a qualifying clause ordinarily is confined to the immediately preceding word or phrase[.]" Davis v. State, 426 Md. 211, 229 n.6, 43 A.3d 1044, 1054 n.6 (2012) (citation omitted).[5] The last antecedent rule does not apply "[w]here the sense of the entire [statute] requires that a qualifying [clause] apply to several preceding" words. Emp't Sec. Admin. v. Weimer, 285 Md. 96, 102, 400 A.2d 1101, 1105 (1979) (citation omitted). Here, it is clear that the sense of CR § 8-611(a)(3) as a whole requires that "adopted or used by a person to identify the goods or services of the person" apply to each word in the preceding list. Indeed, it would be illogical for "adopted or used by a person to identify the goods or services of the person" to apply to the word "word," but not the extremely similar word "term." Thus, the Honorable Christopher B. Kehoe, writing on behalf of the Court of Special Appeals, was entirely correct in concluding that "'intellectual property' encompasses only those terms or words that have been 'adopted or used by a person to identify the goods or services of the person.'" McCree, 214 Md. App. at 256, 76 A.3d at 410 (quoting CR § 8-611(a)(3)).

Our conclusion is unchanged by the following hypothetical situation that McCree

---

[5]The State is incorrect in asserting that Maryland "never adopted" the last antecedent rule. See, e.g., Kane v. Bd. of Appeals of Prince George's Cnty., 390 Md. 145, 162, 887 A.2d 1060, 1070 (2005) ("We commence our analysis by utilizing the generally recognized rule of statutory construction that a qualifying clause ordinarily is confined to the immediately preceding words or phrase[.]" (Citations and internal quotation marks omitted)); see also Davis, 426 Md. at 229 n.6, 43 A.3d at 1054 n.6 (This Court referred to that rule as "the 'rule of the last antecedent[.]'"). That said, the last antecedent rule is general, not absolute. See id. at 229 n.6, 43 A.3d at 1054 n.6 ("Respondent advances also the 'rule of the last antecedent' as a basis for interpreting [a statute in a certain way]. We decline Respondent's invitation. Statutory interpretation should not be guided simply by the application of fixed and immutable canons or rules[.]" (Citations omitted)).

offers in his brief. Bob circulates copies of "Bob's Cookbook," the cover of which contains a "B" in a distinctive font. Bob has not registered the "B" with any government entity. Chris asks Bob for permission to make copies of "Bob's Cookbook," sell them, and split the proceeds. Bob declines.

As the State points out, it is clear that Chris would violate CR § 8-611 by selling copies of "Bob's Cookbook" without Bob's authority, if the "B" is a "label" or a "design" that Bob has adopted or used to identify "Bob's Cookbook," which is a "good." It is not dispositive that Bob has not registered the "B" with any government entity; as discussed above in Part I, CR § 8-611 applies to unregistered labels, terms, devices, designs, or words adopted or used by a person to identify the person's goods or services.

To the extent that McCree contends that the Free Speech Clause protects the misappropriation of unregistered labels, terms, devices, designs, or words that are used to identify goods and services—and thus protects Chris's making and selling copies of "Bob's Cookbook" without Bob's authority—such a contention is not in accord with case law concerning facial vagueness. In determining whether a statute is facially void-for-vagueness, a court considers only whether the statute's "prohibitions are . . . clearly defined." Aladdin's Castle, 455 U.S. at 289 (citation, emphasis, and internal quotation marks omitted). As discussed above, CR § 8-611's prohibitions of certain acts involving "intellectual property" are precisely defined, and there is no need to guess at CR § 8-611's meaning or reason to differ as to CR § 8-611's application. A statute is not facially void-for-vagueness simply because a party disapproves of the statute's proscriptions.

For the above reasons, we hold that CR § 8-611 is not facially void-for-vagueness. As the Court of Special Appeals concluded, the circuit court was correct in determining that CR § 8-611 is not facially void-for-vagueness.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**