**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Randy Steven KAILEY, Defendant-Appellant.**

**No. 82SA331.**

Supreme Court of Colorado, En Banc.

April 18, 1983.

Rehearing Denied May 9, 1983.

---

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Deborah S. Waldbaum, Deputy State Public Defender, Denver, for defendant-appellant.

DUBOFSKY, Justice.

The defendant, Randy Steven Kailey, appeals his conviction of felony child abuse under section 18–6–401(1) and (7), C.R.S. 1973 (1978 Repl.Vol. 8) (1982 Supp.)[1] after a jury trial in Jefferson County district court. The defendant contends that the district court improperly admitted evidence of a similar occurrence and that the statute is unconstitutionally vague. We affirm the judgment.

Shortly after midnight on September 17, 1980, the defendant picked up his four-month-old daughter from the babysitter's. The babysitter, licensed as a child care provider by the Jefferson County Department of Social Services, testified that there were no marks on the baby's head and no bruises on her abdomen when her father came to take her home. The defendant testified that when they arrived home he fed the baby, and after she had cried for a while in her crib, he placed her in his bed and went to sleep. He awoke to find that the child had vomited in the bed, and because he thought she was having difficulty breathing, he called his wife after 4:00 a.m. to come home from work. At about 4:30 a.m., the baby and her parents arrived at the emergency room of St. Anthony's Hospital. The emergency room physician at St. Anthony's determined that the child could be better treated at Children's Hospital, and she was transferred by ambulance to Children's.

Medical personnel at both hospitals noted that the baby had a bruise on her forehead, bruises on her abdomen, and a bulging fontanel. In addition, the baby had subdural bleeding and retinal hemorrhaging. On

---

1. Section 18–6–401 provides:

"(1) A person commits child abuse if he knowingly, recklessly, or through criminal negligence, and without justifiable excuse, causes or permits a child to be:
   (a) Placed in a situation that endangers the child's life or health; or
   (b) Placed in a situation that may endanger the child's life or health; ...

   (d) Abandoned, tortured, cruelly confined, or cruelly punished; ....
   (7)(a)(IV) When a person acts recklessly or with criminal negligence and the child abuse results in serious bodily injury to the child, it is a class 4 felony."

September 21, 1980, a neurosurgeon performed surgery on the child to relieve increasing intracranial pressure. During the surgery, the doctor discovered a pathological subdural membrane, which he removed. The doctor testified that the child was suffering from bilateral subdural hematomas, one acute and one subacute or chronic. Earlier, on July 22, 1980, the child had been admitted to Lutheran Hospital, where her problem was diagnosed as a subdural hematoma.

A number of doctors testified at trial that the cause of the baby's injuries was non-accidental trauma, either a blow to the head or whiplash shaken infant syndrome. The defendant and his wife testified that the July injury was caused either by the baby rolling off the seat of the car or off of a couch, and described her birth, with the assistance of forceps, as a possible explanation for the brain injuries. The parents also voiced their continuing concern with the size of the child's head. The doctor who delivered the baby and served as the child's pediatrician testified that the birth was normal and the child was normal. After thirty days, the child was released from Children's Hospital to a foster home.

## I.

◼ The defendant contends that evidence about the baby's hospitalization in July 1980 for a subdural hematoma should not have been admitted unless the district court complied with the requirements of *People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979), and *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959), for the introduction of evidence of similar acts.[2] During trial, the defendant did not object to the admission of evidence about the July hospitalization, nor did the defendant request any type of limiting instruction at the time of the testimony or when the case was submitted to the jury. Now the defendant argues that because he

was charged with committing child abuse "on and before the 17th day of September, 1980," the jury could have based part of its conviction on the July incident. We are not convinced that *People v. Honey, supra,* and *Stull v. People, supra,* required the district court, *sua sponte,* to review the evidence on the July hospitalization before its introduction and to instruct the jury that that evidence was admitted for a limited purpose only.

◼ Our review of the record reveals that on cross-examination of prosecution witnesses, defense counsel questioned doctors about the parents' conflicting stories of the cause of the July hospitalization, introduced X-rays from the July hospitalization, and attempted to elicit the possibility that the September injury was a "rebleed" of the original July injury. During the defendant's case, defense counsel called as a defense witness the investigating detective and asked him if he had investigated the July incident. The defendant testified in detail about the July incident, as did the child's pediatrician. The defendant's theory of defense apparently was that the September injury was related to the July injury, which was the result of a traumatic birth. Under these circumstances, it would have been totally inappropriate for the district court to have attempted to limit the defendant's introduction of evidence concerning the July incident by imposing the *Honey* and *Stull* requirements. The defendant cannot on appeal change theories and prevail on the notion that the evidence which he sought to introduce was improperly admitted. *People v. Shackelford,* 182 Colo. 48, 511 P.2d 19 (1973).

## II.

◼ Before trial, the defendant moved to dismiss the charges on the basis that subsections 18–6–401(1) and (7) of the child

2. Before introduction of such evidence, the court must address whether there is a valid purpose for which the evidence is offered; whether the evidence is relevant to a material issue in the case; and whether the probative value of the evidence of the prior act, considering other evidence which was relevant to the issue, outweighs the prejudice to the defendant which would result from its admission. *People v. Honey, supra,* 596 P.2d at 754. In addition, the court should instruct the jury on the limited purpose for which the evidence is admitted.

abuse statute were impermissibly vague because they did not specifically delineate the conduct from which citizens must refrain and therefore did not provide sufficient notice to potential wrongdoers or adequate guarantees against discriminatory enforcement. We have rejected similar challenges to the child abuse statute after detailed consideration in *People v. Mann,* 646 P.2d 352 (1982); *People v. Jennings,* 641 P.2d 276 (1982); *People v. Taggart,* 621 P.2d 1375 (1981). In *People v. Jennings,* we concluded that section 18–6–401 is "intelligible and capable of nonarbitrary enforcement." 641 P.2d at 280.

Judgment affirmed.