STATE OF NEBRASKA, APPELLANT, V. ROBIE D. CROWDELL,
APPELLEE.
STATE OF NEBRASKA, APPELLANT, V. MICHAEL
CROWDELL, APPELLEE.

451 N.W.2d 695

Filed February 16, 1990.    Nos. 89-434, 89-435.

Charles W. Campbell, York County Attorney, for appellant.

Kevin V. Schlender for appellee Robie Crowdell.

Max C. Mankin for appellee Michael Crowdell.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Shanahan, J.

In separate informations filed in the district court for York County, the State charged each of the defendants, Robie D. Crowdell and Michael Crowdell, with one count of intentional abuse of a minor child, John Jeffrey Crowdell. Intentional violation of Neb. Rev. Stat. § 28-707 (Reissue 1989) is a Class IV felony, which is punishable by maximum imprisonment for 5 years, a $10,000 fine, or both such imprisonment and fine. Neb. Rev. Stat. § 28-105(1) (Reissue 1985).

Section 28-707 provides:

> (1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:
>
> (a) Placed in a situation that endangers his or her life or health; or
>
> (b) Cruelly confined or cruelly punished; or
>
> (c) Deprived of necessary food, clothing, shelter, or care.
>
> . . . .
>
> (4) Child abuse is a Class IV felony if the offense is committed knowingly and intentionally.

Each of the Crowdells filed a motion to quash the information on the claim that § 28-707 is vague and, therefore, unconstitutional as a denial or deprivation of due process guaranteed by the Constitutions of the United States and Nebraska. See, U.S. Const. amend. XIV; Neb. Const. art. I, § 3. Concluding that the provisions of § 28-707(1)(a) and (c) were unconstitutionally vague, the district court sustained Crowdells' motions and quashed the information against each of them insofar as the prosecution was based on § 28-707(1)(a) and (c), which the court had found to be unconstitutional. The State appealed pursuant to Neb. Rev. Stat. § 29-2315.01 (Reissue 1989) (county attorney's appeal from a decision in a

criminal case).

## STANDARD OF REVIEW

Alleged unconstitutionality of a statute presents a question of law, which must be determined by the Supreme Court independent from the conclusion reached by a trial court on the constitutional question. See, *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284 (1989); *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989).

The State's exceptions are twofold. First, the State contends that Crowdells lack standing to attack the constitutionality of § 28-707(1)(a) and (c). Second, the State asserts that § 28-707(1)(a) and (c) are not void and unconstitutional as a denial or deprivation of a defendant's right to due process relative to a criminal statute which is the basis for prosecution of the defendant.

## STANDING

"For standing to contest constitutionality of a statute, the contestant must be one who is, or is about to be, adversely affected by the statute in question and must show that, as a consequence of the statute's alleged unconstitutionality, the contestant is deprived of a constitutionally protected right. . . .

. . . .

"Courts will not decide a question concerning the constitutionality of a statute unless such question has been raised by a litigant whose interests are adversely affected by the questioned statute. A court has no power to summarily pass upon the constitutionality of a legislative act, but has power only to decide justiciable disputes. A court's power to declare a statute unconstitutional may be invoked only when the challenged statute affects a litigant's right under the Constitution. [Citations omitted.]"

*State v. Monastero*, 228 Neb. 818, 837-38, 424 N.W.2d 837, 849-50 (1988) (quoting from *In re Estate of West*, 226 Neb. 813, 415 N.W.2d 769 (1987)). See, also, *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985); *State v. Irwin*, 208 Neb. 123, 302 N.W.2d 386 (1981).

Both Crowdells face potential criminal liability as a consequence of conviction on the charges against them in the present proceedings. Thus, punishment for violation of the statute in question creates a direct threat to the liberty of Crowdells, who, therefore, have standing for a constitutional challenge based on the alleged vagueness of § 28-707(1)(a) and (c).

CONSTITUTIONALITY OF § 28-707(1)(a) AND (c)

Crowdells contend that the word "endangers" in § 28-707(1)(a) and the word "necessary" in § 28-707(1)(c) fail to define, with requisite constitutional definitude and sufficiency, the conduct sought to be prohibited by the statute, which thereby deprives them of notice necessary for due process in and from a criminal statute utilized for prosecution of a defendant. The State argues that the questioned language in § 28-707(1)(a) and (c) is easily understood by persons of ordinary intelligence and affords sufficient notice concerning the conduct condemned by the statute.

"One claiming that a statute is unconstitutional has the burden to show that the questioned statute is unconstitutional." *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 265, 445 N.W.2d 284, 288 (1989). Unconstitutionality of a statute must be clearly demonstrated before a court can declare the statute unconstitutional. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987).

> "In order to meet constitutional standards of due process, a penal statute must be sufficiently clear so that a person of ordinary intelligence has fair notice of what exactly is forbidden conduct under the act. . . . [I]n construing a penal statute this court will give it an interpretation which meets constitutional requirements if it can reasonably be done. . . ."

224 Neb. at 684, 401 N.W.2d at 151 (quoting from *State v. Neal*, 187 Neb. 413, 191 N.W.2d 458 (1971)).

An essential purpose of a penal statute is to provide notice to the ordinary person concerning conduct which is proscribed as criminal. *State v. Carlson*, 223 Neb. 874, 394 N.W.2d 669 (1986).

Regarding a constitutional attack on a statute claimed to be vague, we have noted:

> The vice of vagueness in a penal statute was denounced in *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983), by the U.S. Supreme Court's statement: "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. [Citations omitted.] Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' [Citation omitted.] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' [Citation omitted.]" 461 U.S. at 357-58. See, also, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972).

*State v. Monastero*, 228 Neb. 818, 833, 424 N.W.2d 837, 847 (1988).

"[D]ue process requires that a penal statute supply adequate and fair notice of the conduct prohibited and also supply an explicit legislative standard defining the proscribed conduct, to prevent arbitrary and discriminatory enforcement at the discretion of law enforcement officials." 228 Neb. at 833, 424 N.W.2d at 847.

A penal statute is given a strict construction which is sensible and prevents injustice or an absurd consequence. *Wounded Shield v. Gunter,* 225 Neb. 327, 405 N.W.2d 9 (1987); *State v. Douglas,* 222 Neb. 833, 388 N.W.2d 801 (1986). When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning so that, in the absence of a statutory indication to the contrary, words in a statute will

be given their ordinary meaning. *State v. Carlson, supra.*

Crowdells contend that § 28-707(1)(a) is facially vague because, regarding the life or health of a minor child protected by the statute, the meaning of the term "endangers" is not reasonably certain or sufficiently definite. The word "endangers" is not defined by § 28-707 or any other part of the Nebraska Criminal Code pertinent to the charges against Crowdells. However, "endanger" is defined in Webster's Third New International Dictionary, Unabridged 748 (1981) as "to bring into danger or peril of probable harm or loss: imperil or threaten danger to." " '[E]ndanger' means to expose to loss or injury; to jeopardize." *Texas Dept. of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987). Therefore, in § 28-707(1)(a), "endangers" means to expose a minor child's life or health to danger or the peril of probable harm or loss.

As a matter of practicability for general application, child abuse statutes, by virtue of the nature of their subject matter and the nature of the conduct sought to be prohibited, usually contain broad and rather comprehensive language. In response to a challenge to a statute imposing criminal liability on one who " 'causes or permits the life or limb of such child to be endangered,' " *People v. Beaugez,* 232 Cal. App. 2d 650, 655, 43 Cal. Rptr. 28, 32 (1965), the court observed:

> The type of conduct which [this] statute seeks to reach defies precise definition. In number and kind the situations where a child's life or health may be imperiled are infinite. Yet the aim of the statute is not obscure and its objective is a salutary social one. It seeks to protect children from wilful mistreatment whether directly or indirectly applied. The portion of the statute which we construe relates to indirect mistreatment. Frequently it is the only sort of child abuse that can be proved. Unhappily it is a matter of common knowledge that badly mistreated children are received as county hospital patients daily. Because, in most cases, abuse occurs in the privacy of the home, proof of the actor directly responsible is, more often than not, impossible. If children are to be protected against such mistreatment, responsibility must be fixed upon those indirectly responsible—those who wilfully

permit situations to exist which imperil children. Although the language of the statute is broad and the prohibited behavior is very general, this seems *necessary* in the nature of its subject matter.

(Emphasis in original.) 232 Cal. App. 2d at 656-57, 43 Cal. Rptr. at 32-33.

In *State v. Fisher*, 230 Kan. 192, 631 P.2d 239 (1981), the Supreme Court of Kansas, when confronted with a constitutional challenge to the Kansas child abuse statute which prohibited willfully "endangering a child," rejected a "vagueness" attack on the statute, concluding:

The wording of the statute is broad, but the purpose is likewise broad; to prevent people from placing children in situations where their lives and bodies are obviously in imminent peril. . . . [I]f a child is endangered, it may be injured; it is the likelihood of injury against which the statute speaks. We conclude that [the child abuse statute] is clear and understandable; that ordinary persons can determine what conduct is proscribed by a common-sense reading of the statute; that the statute conveys a sufficiently definite warning when measured by common understanding; and that it is not void for vagueness.

230 Kan. at 199-200, 631 P.2d at 246.

The Supreme Court of Pennsylvania, in *Commonwealth v. Mack*, 467 Pa. 613, 359 A.2d 770 (1976), rejected a "facial vagueness" challenge to a child abuse statute which imposed criminal liability if one "knowingly endangers the welfare of [a] child" and stated:

"[T]he purpose of juvenile statutes, as the one at issue here, is basically protective in nature. Consequently these statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be circumscribed, these statutes are necessarily drawn broadly. It clearly would be impossible to enumerate every particular type of adult conduct against which society wants its children protected. We have therefore sanctioned statutes pertaining to juveniles which proscribe conduct producing or tending to produce a *certain defined result* . . . rather than itemizing every

undesirable type of conduct. . . ." *Commonwealth v. Marlin*, 452 Pa. 380, 386-87, 305 A.2d 14, 18 (1973) (emphasis in original).

. . . Phrases such as "endangers the welfare of the child" and "duty of care, protection or support" are not esoteric. Rather, they are easily understood and given content by the community at large. An individual who contemplates a particular course of conduct will have little difficulty deciding whether his intended act "endangers the welfare of the child" by his violation of a "duty of care, protection, or support."

359 A.2d at 772.

Other courts which have held that the word "endanger," or similar language derived from "to endanger," in a child abuse statute withstands a constitutional attack for facial vagueness include the following: *People v. Vandiver*, 51 Ill. 2d 525, 283 N.E.2d 681 (1971) (a child abuse statute which contained "wilfully to cause or permit the life of [a] child to be endangered, or the health of [a] child to be injured, or wilfully cause or permit [a] child to be placed in such a situation that its life or health may be endangered," 51 Ill. 2d at 527, 283 N.E.2d at 682, "is not so vague as to constitute an unconstitutional deprivation of due process of law," 51 Ill. 2d at 530, 283 N.E.2d at 684); *People v. Bergerson*, 17 N.Y.2d 398, 218 N.E.2d 288, 271 N.Y.S.2d 236 (1966) (child abuse statute, "Wilfully causes or permits the life or limb of any child . . . to be endangered, or its health to be injured," N.Y. Penal Law § 483 (McKinney 1944), was constitutional against a "vagueness challenge"); *State v. Sammons*, 58 Ohio St. 2d 460, 391 N.E.2d 713 (1979) (child abuse statute which prohibited "endangering children" was not unconstitutionally vague); *People v. Kailey*, 662 P.2d 168 (Colo. 1983) (child abuse statute prohibiting placement of a child "in a situation that endangers the child's life or health" was constitutional, 662 P.2d at 169 n.1); *State v. deBoucher*, 135 Ariz. 220, 660 P.2d 471 (1982) (a child abuse statute which prohibited placing a child " 'in a situation where its person or health is endangered' " was "sufficiently clear to allow members of society to comprehend their legal duty," 135 Ariz. at 227, 660 P.2d at 478); *People v. Rogers*, 104 Ill. App. 3d 326,

432 N.E.2d 975 (1982); and *State v. Coe*, 92 N.M. 320, 587 P.2d 973 (1978).

Michael Crowdell directs us to *State v. Meinert*, 225 Kan. 816, 594 P.2d 232 (1979), and states that the Supreme Court of Kansas, in *Meinert*, held that "the language 'endangering of life' is too indefinite to pass constitutional muster." Brief for appellee Michael Crowdell at 7. We have examined the *Meinert* opinion and find no such conclusion by the Kansas Supreme Court. Rather, the court concluded that the phrase "unjustifiable physical pain" was too vague and uncertain to establish a reasonably definite standard for determination of criminal guilt in accordance with due process.

Consequently, we conclude that the word "endangers," used in § 28-707(1)(a), has an easily and commonly understood meaning and is not vague. For that reason, § 28-707(1)(a) supplies sufficient notice concerning the criminal conduct prohibited by the statute and is in accordance with due process.

Crowdells also contend that the word "necessary," used in § 28-707(1)(c) regarding deprivation of food, clothing, shelter, or care, is too vague and uncertain to comport with the due process requirement of notice pertaining to conduct proscribed by a penal statute. "Necessary" is defined as "1a . . . items (as of food, clothing, shelter, medical care, equipment or furnishing) that cannot be done without: things that must be had (as for the preservation and reasonable enjoyment of life) . . . 2: that cannot be done without: that must be done or had: absolutely required." Webster's Third New International Dictionary, Unabridged 1510-11 (1981).

In a challenge to the phrase "necessary sustenance" in a child abuse statute, the Supreme Court of Georgia defined that phrase: " 'Sustenance is "that which supports life; food; victuals; provisions;" . . . Our statute, in the use of the word "sustenance," means that necessary food and drink which is sufficient to support life and maintain health.' " *Caby v. State*, 249 Ga. 32, 33, 287 S.E.2d 200, 201 (1982) (quoting from *Justice v. The State*, 116 Ga. 605, 42 S.E. 1013 (1902)). Consequently, in relation to a child's sustenance, the Georgia court held that the word "necessary" in the Georgia child abuse statute was not unconstitutionally vague.

Also, in *State v. Joyce*, 361 So. 2d 406, 407 (1978), the Supreme Court of Florida found no merit in the contention that "necessary food, clothing, shelter, or medical treatment," contained in a Florida child abuse statute, was constitutionally defective from the standpoint of notice required for due process. In a similar manner, the Supreme Court of Washington, in *State v. Brown*, 52 Wash. 2d 92, 323 P.2d 239 (1958), examined the word "necessary" in a Washington child abuse statute which punished the willful failure to provide " '*necessary* food, clothing, shelter, or medical attendance' " to a child. 52 Wash. 2d at 94, 323 P.2d at 241. The Washington court stated that "the word *necessary*, as used in such statutes, relates to the minimum standard of the quality and quantity of food, clothing, shelter, and medical attendance" for a child protected by the Washington child abuse statute. *Id.*

Robie Crowdell asserts that "necessary" in § 28-707(1)(c) is not subject to a reasonably uniform application and asserts:

> The standard of living will also differ among individual jurors thereby causing different expectations as to the amount and type of food, clothing, shelter or care which is necessary. These determinations will depend on the socio-economic background of the individual jurors as well as their own experiences and opinions on parenting techniques.

Brief for appellee Robie Crowdell at 9. The socioeconomic approach, suggested by Robie Crowdell, was expressly rejected by the Supreme Court of Ohio in *State v. Sammons*, 58 Ohio St. 2d 460, 462-63, 391 N.E.2d 713, 714-15 (1979), when the court stated:

> In advancing this premise appellant sets forth that "[s]tudies have demonstrated that the working class (i. e., blue collar) parents tend to emphasize conformity to external standards of orderliness, obedience, and respect for adults, and are more likely to rely on the use of physical force as a means of punishment. In contrast middle class (i. e., white collar) parents tend to emphasize self-direction, individualism, and realization of potential, and are more likely to rely on verbal interaction in response to persistent misbehavior."

The foregoing discussion as advanced by appellant in support of the claimed vagueness of this statute is of little weight in applying what may be considered to be a reasonable standard of duty of care and protection of one's children generally to be applied throughout the community.

Whatever the color of the collar, a generally acceptable standard of societal attention to the needs and care of our offspring is not difficult of either determination or application. The norm in our society is for a parent to strive to see that his children are reasonably well nourished, housed, and clothed and reasonably protected from harm, and provided with necessary health care.

We, too, reject the contention that potential socioeconomic differences render the statute constitutionally infirm.

We find that the word "necessary," relative to the condemned deprivation of food, clothing, shelter, or care in § 28-707(1)(c), is a word with an ordinary meaning which supplies a constitutionally sufficient standard based on common usage and understanding. Therefore, § 28-707(1)(c) is not void for vagueness and is constitutional.

For the foregoing reasons, we sustain the State's exceptions, reverse the district court's judgments, and remand these causes for further proceedings.

EXCEPTIONS SUSTAINED, AND CAUSES REMANDED FOR FURTHER PROCEEDINGS.