*Myers v. State*, No. 297, September Term, 2019, Opinion by Graeff, J.

**PRECEDENTIAL SIGNIFICANCE — SPLIT DECISIONS**

The holding of a plurality decision of the Supreme Court is "that position taken by those Members who concurred in the judgments on the narrowest grounds." *State v. Falcon*, 451 Md. 138, 161 (2017) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)). In determining the precedential significance of a Court of Appeals decision without a majority opinion, the Court of Appeals follows a "somewhat similar approach." *Id*., at 162. This approach analyzes whether there is a position adopted by a majority of the judges, whether or not they concurred in the judgment, including those set forth in dissenting opinions.

Where there is a majority opinion on one issue that resolves the case, statements of law set forth in concurring and dissenting opinions on a separate issue, even if joined by a majority of the judges, do not have precedential authority.

**CRIMINAL LAW — NEGLECT OF A MINOR — CONSTITUTIONAL LAW — VOID FOR VAGUENESS**

Md. Code Ann., Criminal Law Article ("CR") § 3-602.1(b) (2012 Repl. Vol.) provides that "[a] parent, family member, household member, or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not neglect the minor." "'Neglect' means the intentional failure to provide necessary assistance and resources for the physical needs or mental health of a minor that creates a substantial risk of harm to the minor's physical health or a substantial risk of mental injury to the minor." CR § 3-602.1(a)(5)(i).

CR § 3-602.1, on its face and as applied to the facts of appellant's case, is not unconstitutionally vague. It provides fair notice of the conduct that is prohibited, and it does not lead to arbitrary enforcement. Here, appellant, an unlicensed daycare provider, fell asleep and failed to supervise the two-year old in her care because she consumed heroin the night before and was suffering from withdrawal, and she failed to seek prompt medical care after the child fell and was unconscious. A person of ordinary intelligence and experience in appellant's circumstances would have understood that CR § 3-602.1 prohibited her conduct.

Circuit Court for Baltimore County
Case No. 03-K-18-2531

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 297

September Term, 2019

_____

HEATHER MYERS

v.

STATE OF MARYLAND

_____

Graeff,
Leahy,
Battaglia, Lynne A.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Graeff, J.
_____

Filed:  November 18, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

On January 19, 2018, S. N. left her two-year-old daughter with Heather Myers, appellant, an in-home daycare provider. Appellant fell asleep on her living room couch, and she woke up when she heard a thud. She found the child unconscious in a bedroom. The child suffered a catastrophic brain injury that left her blind and functioning at the level of a 3- to 4-month-old child.

Appellant was charged in the Circuit Court for Baltimore County with neglect of a minor, in violation of Md. Code Ann., Criminal Law Article ("CR") § 3-602.1 (2012 Repl. Vol.). She filed a motion to dismiss, arguing that the statute was unconstitutionally vague. After the circuit court denied the motion, appellant entered a conditional guilty plea, preserving her right to appeal the constitutionality of the statute.

On appeal, appellant presents the following question for this Court's review, which we have reworded slightly:

> Is CR § 3-602.1, the child neglect statute, unconstitutional because it is vague?

For the reasons set forth below, we answer that question "no," and therefore, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2018, two days after her daughter's second birthday, S. N. dropped off Madi at appellant's residence. S.N. was a single mother working at St. Joseph's Medical Center, and she had hired appellant as her daycare provider on the recommendation of a friend. S.N. paid appellant, an unlicensed provider who had "watched several children throughout the years," more than a hundred dollars a week to

care for Madi. Appellant also was caring for her own four-year-old son. S.N., who considered appellant an attentive caregiver and a friend, was not aware that appellant was addicted to heroin.

S.N. left Madi with appellant at approximately 8:30 a.m. that morning. She went to a doctor's appointment, and when she called to check on Madi after her appointment at approximately 10:30 a.m., appellant reported that everything was fine. S.N. then went to work at St. Joseph Medical Center. At approximately 12:19 p.m., she checked her cell phone and saw that she had numerous missed calls from appellant. S.N. recounted what happened next:

> I was not supposed to be on my phone, especially while on patient floors but I assumed it was urgent with so many missed calls from [appellant], so I called her back.
>
> Upon calling her back, she told me that there was an accident and that I needed to pick Madi up and take her to the emergency room right away.
>
> Thankfully, I had two nurses sitting in front of me who . . . calmed me down and told me what to ask. I proceeded to ask [appellant] two questions, one being if Madi was conscious. Two, if she was breathing. The reason I asked these two questions was because if she was unconscious or not breathing, I simply could not just pick her up and take her to the emergency room, she needed immediate care from EMS.
>
> Upon asking these questions, she reiterated that I needed to come pick Madi up myself right away and take her to the emergency room. I then again asked if she was conscious and breathing, and [appellant] informed me that she was breathing and unconscious.
>
> I informed [appellant] that I am unable to just pick her up and take her to the emergency room, that I was hanging up and she needed to call 911 right away. I also told her to keep her hand on her chest to ensure that she was breathing and to not move her in case of spinal cord injury.
>
> She called 911, and I ran out of work.

2

At 12:22 p.m., after speaking with S.N., appellant called 911, reporting that Madi "had fallen from the top bunk." The first responder on the scene found the child "on the floor, immobile, unresponsive and unconscious" next to a four-foot-high loft bed. Appellant told the officer that "Madi was placed on the loft bed for a diaper change," and when appellant went "out to the living room area where the diapers were," the child "must have fallen off the bed, because she had heard her fall when she was in the other room."

When medics arrived moments later, they observed that the child "had raspy breathing," and "her pupils were unevenly dilated, indicating that there was blood or brain injury." Because "[s]he was suffering from high intracranial pressure," i.e., brain swelling, she was transported by helicopter from a nearby school to Johns Hopkins.

Madi survived after a series of emergency and surgical interventions, including the removal of a portion of her skull. As a result of her injuries, however, which included "acute subdural hemorrhage causing a midline shift of the brain," she was left blind, and she will forever function at the level of a 3- to 4-month old child, who needs 24-hour care. S.N., who has a bachelor's degree in nursing, quit her nursing job to become Madi's full-time care provider.

After doctors concluded that the child's injuries were inconsistent with a four-foot fall in the manner appellant had described, the police re-interviewed appellant, and she changed her account of what happened. Appellant admitted that she had used heroin the night before Madi's accident, but she denied that she was under the influence when she

3

was caring for Madi.[1]  She stated that, on the day of the accident, "she was getting sick from withdraw[al] and was not feeling well," so she laid down on the couch and fell asleep for "over 30 minutes."  When she went to sleep, her son was watching his iPad, and "Madi was playing in the living room area."

Appellant stated that she "woke up to a thud."  She ran into the bedroom and saw Madi unconscious.  She picked Madi up and "tried to wake her up but could not."  Appellant was not able to explain how the injuries to Madi occurred, but she indicated that Madi recently had been climbing on the loft bed.  When Madi's doctor was advised that she might have climbed up to the top rung of the ladder on the loft bed, he agreed that her head injuries could have been caused by her falling back and hitting the back of her head.

Appellant was charged with one count of neglecting a minor in violation of CR § 3-602.1(b), which provides that "[a] parent, family member, household member, or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not neglect the minor."  "Neglect" is defined as "the intentional failure to provide necessary assistance and resources for the physical needs or mental health of a minor that creates a substantial risk of harm to the minor's physical health or a substantial risk of mental injury to the minor."  CR § 3-602.1(a)(5)(i).

On September 11, 2018, appellant filed a motion to dismiss the charge, asserting, among other things, that the statute was unconstitutionally vague because it failed to

---

[1] Appellant stated that she had developed an addiction to Percocet after having meningitis and another injury following the birth of her child, and she then "moved to heroin because [it was] a cheaper, easier alternative."

4

"provide fair notice of the conduct proscribed" or "provide explicit standards of enforcement." She argued that the statute does not identify what conduct might qualify as "neglect," asserting that the statute does not make clear what constitutes "necessary assistance and resources," the child's "physical needs," and a "substantial risk of harm." CR § 3-602.1(a)(5)(i).

Following a hearing, the circuit court denied appellant's motion. The court found that CR § 3-602.1 was constitutional, stating that the legislature intentionally did not provide particular examples of what constituted neglect because each case involves an individual factual determination.

On April 17, 2019, appellant entered a conditional guilty plea. The court sentenced her to five years' imprisonment, all but 18 months suspended, and three years' supervised probation.

This appeal followed.

## STANDARD OF REVIEW

"[T]he standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct." *Howard v. Crumlin*, 239 Md. App. 515, 521 (2018) (quoting *Blackstone v. Sharma*, 461 Md. 87, 110 (2018)), *cert. denied*, 463 Md. 153 (2019). We review the denial of a motion to dismiss de novo. *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 350 (2019); *Lipp v. State*, 246 Md. App. 105, 110 (2020).

5

**DISCUSSION**

Appellant contends that CR § 3-602.1 is "unconstitutionally vague on its face and as applied to the particular facts of this case." She asserts that the statute "is not sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, and . . . it fails to establish minimal guidelines to govern law enforcement, leading to arbitrary and discriminatory enforcement."

The State contends that appellant's challenge "must fail because the constitutional vagueness of § 3-602.1 was decided by the Court of Appeals in *Hall v. State*, 448 Md. 318 (2016)." It asserts that, "[b]ecause a majority of the judges in *Hall* found [CR] § 3-602.1 not to be unconstitutionally vague, that finding constitutes precedent of the Court of Appeals and this Court is bound by it." Recognizing that the five judges who opined on the constitutionality of CR § 3-602.1 were those who wrote or joined concurring and dissenting opinions, the State asserts as an alternative argument that, even if the opinion of the five judges in *Hall* is not binding precedent, it is, at a minimum, "persuasive and well-reasoned dicta that should be followed by this Court."

In her reply brief, appellant argues that *Hall* is not "binding precedent." She asserts that the "common thread" in the different opinions is that the evidence "was insufficient to sustain Ms. Hall's conviction for neglect." Accordingly, appellant argues that "the positions of the concurring and dissenting judges may be persuasive authority," but "they are not binding on this Court."

# I.

## Precedential Value of *Hall v. State*

We begin our analysis with a review of the Court of Appeals' decision in *Hall* to determine whether, as the State alleges, that decision constitutes binding precedent that CR § 3-602.1 is not unconstitutionally vague. In that case, Ms. Hall had left A., her three-year-old son, who was "difficult to handle" and had a history of escaping the home, in the overnight care of D., Ms. Hall's 14-year-old daughter, without any way for the daughter to contact Ms. Hall. *Hall*, 448 Md. at 323–26. At approximately 2:00 a.m., A. was found in the middle of a six-lane road. *Id*. at 324. Ms. Hall was convicted of criminal child neglect pursuant to CR § 3-602.1. *Id*. at 326. This Court upheld the conviction, and Ms. Hall sought review in the Court of Appeals on two grounds: (1) the statute was void for vagueness; and (2) the evidence was insufficient to support her conviction. *Id*. at 321, 326.

The Court of Appeals ultimately reversed Ms. Hall's conviction, but the case generated three separate opinions. Judge Battaglia, joined by Judge Adkins, wrote an opinion announcing the judgment of the Court. Judge Battaglia determined that the evidence was not sufficient to support Ms. Hall's conviction. *Id*. at 327. Based on that conclusion, and the policy to decide constitutional issues only when necessary, Judge Battaglia determined that the Court did not need to reach the issue whether CR § 3-602.1 was constitutional. *Id*. at 327 & n.6.

Judge McDonald wrote a concurring opinion, joined by Chief Judge Barbera, stating that a holding that the evidence was insufficient to support Ms. Hall's conviction

7

"necessarily entails a decision that the statute is not unconstitutionally vague." *Id.* at 337.

Judge McDonald explained:

> If the statute were unconstitutionally vague, then a trier of fact would not know what the essential elements of the crime were and we could not reach a conclusion, one way or the other, whether the trier of fact could have found that the elements of the offense were proven.
>
> Thus, in order to conclude, as the Majority opinion does, that no rational trier of fact could have found the essential elements of the crime from the evidence here, we necessarily must be able to identify the elements of the offense and have surmounted the vagueness hurdle. For the reasons that Judge Hotten's dissent ably explains, I do not believe that the statute is unconstitutionally vague. However, for the reasons that the Majority Opinion elucidates, I do not believe the evidence was sufficient to support the conviction.

*Id.* at 338.

Judge Hotten wrote a dissenting opinion. *Id.* at 339–54 (Hotten, J., dissenting). This opinion, which was joined by Judge Greene and Judge Watts, stated that the evidence was sufficient to support Ms. Hall's conviction, and CR § 3-602.1 "was not unconstitutionally vague as applied to Ms. Hall." *Id.* at 339.

Thus, four judges, Judges Battaglia, Adkins, McDonald, and Chief Judge Barbera, determined that the evidence was insufficient to support Ms. Hall's conviction, resulting in a majority opinion to reverse Ms. Hall's conviction. Five judges, however, Judges Hotten, Greene, Watts, McDonald, and Chief Judge Barbera, concluded, in concurring and dissenting opinions, that CR § 3-602.1 was not unconstitutionally vague as applied to Ms. Hall.

The State contends that, because five judges in *Hall* determined that CR § 3-602.1 was not unconstitutionally vague, "that finding constitutes precedent of the Court of

Appeals and this Court is bound by it." It asserts, relying on *State v. Falcon*, 451 Md. 138, 161 (2017), that when there is a split decision, "a legal proposition that garners the agreement of at least four judges constitutes precedent of the Court, even if the proposition did not garner the agreement of the opinion that announced the Court's judgment."

In *Falcon*, 451 Md. at 161, the Court stated that, in a Supreme Court case that lacks a majority opinion, it follows the "*Marks* approach," referring to *Marks v. United States*, 430 U.S. 188, 193 (1977). It explained that approach as providing that, "[w]hen a fragmented . . . Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Falcon*, 451 Md. at 161.

The Court then explained that, in "determining the precedential significance of a case without a majority opinion" in the Court of Appeals, it follows a "somewhat similar approach." *Id.* at 162. In support, the Court cited to *Cure v. State*, 421 Md. 300, 318, 321 (2011), where the Court adopted the reasoning of a dissent in a "fractured" decision, noting that, "[f]or purposes of *stare decisis* . . . this is a proposition that garnered the support of four Judges." It also cited to *State v. Giddens*, 335 Md. 205, 213 n.6 (1994), where the Court held that the issue whether a crime bore on witness credibility was a matter of law, noting the parties' agreement with this standard and that four judges, in concurring and dissenting opinions, in a prior opinion had come to that conclusion.

In *Falcon*, 451 Md. at 171–72, the Court examined the legal propositions set forth in the four separate opinions in a prior case with no majority opinion. The Court

9

determined that, although there were disagreements in the different opinions, there was some common ground, and all of the opinions would support the result reached in *Falcon*. *Id.* at 172–73.

We note initially that the Court of Appeals' approach to interpreting its split decisions is "somewhat similar" to the *Marks* approach in interpreting split Supreme Court decisions, but it is different. The *Marks* approach provides that "the holding of the [Supreme] Court may be viewed as that position taken by those Members who **concurred in the judgments** on the narrowest grounds." *Marks*, 430 U.S. at 193 (emphasis added). The approach that the Court of Appeals has adopted for determining the precedential significance of a plurality opinion, by contrast, involves looking for a position adopted by a majority of the judges in all the opinions, whether or not they concurred in the judgment, including those set forth in dissenting opinions. *See* Shane M.K. Doyle, Comment, *The Unsoundness of Silence: Silent Concurrences and Their Use in Maryland*, 79 Md. L. Rev. Online 129, 140 (2020) (referring to Maryland's approach to analysis of plurality opinions as the "all opinions approach").[2] That approach appears to be the basis for the State's argument that the views of the five judges in the concurring and dissenting opinions constitute binding precedent in this case.

_____

[2] This Court also has considered dissenting opinions in determining the precedential authority of a plurality opinion of the Court of Appeals. *See State v. Johnson*, 208 Md. App. 573, 599–600 (2012) (In determining the precedential effect of *Agurs v. State*, 415 Md. 62 (2010), where there were multiple opinions expressing different views on two issues, we stated that the only authoritative opinion was that set forth by the three-judge plurality reversing the case, with respect to the portion with which one dissenting judge agreed.).

The analysis set forth in *Falcon*, however, is applicable when "determining the precedential significance of a case without a majority opinion." *Falcon*, 451 Md. at 162. In *Hall*, there was a majority opinion, i.e., that the case should be reversed based on the insufficiency of the evidence. The question, then, is whether a legal proposition on a different issue that was supported by five judges is binding precedent or persuasive dicta.

We addressed a similar situation in *Faison v. MCOCSE*, 235 Md. App. 76 (2017). In that case, we addressed the impact of a prior case, *Davis v. Wicomico County Bureau*, 447 Md. 302 (2016), on Faison's argument that, although he signed an affidavit of parentage, he was entitled to an order authorizing genetic testing. *Faison*, 235 Md. at 83–84. *Davis*, similar to *Hall*, generated three separate opinions. The opinion announcing the judgment of the Court, comprised of three judges, determined that Davis' claim was barred by the doctrine of *res judicata*. *Davis*, 447 Md. at 311. Similar to *Hall*, the concurring opinion agreed on the issue deciding the case, providing a four-vote majority opinion. The dissenting opinion, comprised of three judges, was of the view that the claim was not barred by *res judicata*, and Davis should be granted a genetic test. *Id.* at 337–57. Because the concurring opinion agreed with the dissent that, if the claim had not been barred by *res judicata*, Davis had the right to genetic testing, *id.* at 336–37, a majority of the judges concluded that, generally, a putative father, after executing an affidavit of parentage, could obtain a genetic test.

In assessing the effect of the 3-1-3 *Davis* decision, Judge Nazarian, writing for this Court, stated that "the *Davis* concurrence-plus-dissent's statutory analysis qualifies officially as *dicta*." The Court went on to state, however, that, "[d]icta or not, . . . the

11

dissent has analyzed the statute correctly." *Faison*, 235 Md. App. at 84. *See also Boone v. Youngbar*, 234 Md. App. 288, 298 (2017) (recognizing the challenge in determining the impact of the fractured vote in *Davis* on the ability of a father who signed an affidavit of parentage to challenge parental status with a genetic test, but not deciding the issue because it was not raised).

As the Court in *Faison* indicated, and contrary to the State's argument here, where there is a majority opinion on one issue that resolves the case, statements of law set forth in concurring and dissenting opinions on a separate issue, even if joined by a majority of the judges, do not have precedential authority. Thus, we are not, as argued by the State, bound by precedent from the Court of Appeals "that 3-602.1 was not unconstitutionally vague."[3]

Nevertheless, the reasoning set forth by Judge Hotten, and agreed upon by four other judges, regarding the constitutionality of CR § 3-602.1 is well-reasoned, persuasive dicta. Accordingly, it shall guide our decision here.

---

[3] Moreover, the ultimate decision reached by the dissent, and agreed with by the concurring judges, was not identical to the issue presented here. The judges in *Hall* determined that the statute was not unconstitutionally vague **as applied to Ms. Hall**. *Hall v. State*, 448 Md. 318, 339 (2016) (Hotten, J., dissenting) (emphasis added). In this case, appellant argues that the statute is unconstitutional on its face and as applied to the facts in her case.

## II.

## Constitutionality of CR § 3-602.1

The circuit court found that CR § 3-602.1 was not unconstitutionally vague. We do not give that decision deference, but rather, we review the question of constitutionality de novo. *McCree v. State*, 441 Md. 4, 9 (2014).

"In addressing a claim involving the constitutionality of a statute, we begin 'with a presumption that the statute is constitutional.'" *Beattie v. State*, 216 Md. App. 667, 678 (2014) (quoting *Walker v. State*, 432 Md. 587, 626 (2013)). The person challenging the statute "bears the burden of overcoming this presumption and establishing the statute's unconstitutionality." *Id.*

The United States Supreme Court has stated that "a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). When a legislature enacts a criminal law, it must write the statute so that it "give[s] ordinary people fair warning about what the law demands of them." *Id.* Vague laws leave "people with no sure way to know what consequences will attach to their conduct." *Id.* A statute will be deemed unconstitutionally vague if it (1) "fails to give ordinary people fair notice of the conduct it punishes," or (2) is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015)).

This Court has explained the first prong of a vagueness analysis, as follows:

"[A] statute must be 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'" *Livingston,* 192 Md. App. at 568, 995 A.2d 812 (quoting *Eanes v. State,* 318 Md. 436, 458–59, 569 A.2d 604 (1990)). The Court of Appeals has explained that "[t]he standard for determining whether a statute provides

13

fair notice is 'whether persons of "common intelligence must necessarily guess at [the statute's] meaning."'" *Galloway,* 365 Md. [599,] 615, 781 A.2d 851 [(2001)] (quoting *Williams v. State,* 329 Md. 1, 8, 616 A.2d 1275 (1992)).

*State v. Phillips*, 210 Md. App. 239, 266 (2013).  A statute will not fail for vagueness "if the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, *if* they possess a common and generally accepted meaning."  *Id.* at 266 (quoting *Livingston*, 192 Md. App. at 569).  *Accord Galloway*, 365 Md. at 615.  "[T]he vagueness doctrine does not require absolute precision or perfection."  *McCree*, 441 Md. at 20 (quoting *Galloway*, 365 Md. at 634).

The second prong of a vagueness analysis considers whether the statute "provide[s] 'legally fixed standards and adequate guidelines for police, judicial officers, triers of fact and others whose obligation it is to enforce, apply and administer the penal laws.'" *McCree,* 441 Md. at 19 n.4 (quoting *Galloway*, 365 Md. at 615–16).  The statute must

> "'eschew arbitrary enforcement in addition to being intelligible to the reasonable person.'"  *Galloway*, 365 Md. at 615–16, 781 A.2d 851 (quoting *Williams*, 329 Md. at 9, 616 A.2d 1275).  "[A] statute is not unconstitutionally vague merely because it allows for the exercise of some discretion on the part of law enforcement and judicial officials."  *Id.* at 616, 781 A.2d 851.  Rather, "[i]t is only where a statute is so broad as to be susceptible to irrational and selective patterns of enforcement that it will be held unconstitutional under this second arm of the vagueness principle."  *Id.*

*Phillips*, 210 Md. App. at 266.

Appellant contends that CR § 3-602.1 "violated both prongs of the void for vagueness doctrine." She asserts that the statute is unconstitutionally vague on its face and as applied to the facts of her case.

The Court of Appeals has explained the distinction between a facial challenge and "as-applied" challenge, as follows:

> An as-applied challenge is "a claim that a statute is unconstitutional on the facts of a particular case or in its application to a particular party." As–Applied Challenge, Black's Law Dictionary (10th ed. 2014). By contrast, a facial challenge is "[a] claim that a statute is unconstitutional on its face—that is, that it always operates unconstitutionally." Facial Challenge, Black's Law Dictionary (10th ed. 2014). In other words, to be successful, a facial challenge "must establish that there is no set of circumstances under which the [statute] would be constitutional[.]" *Harrison-Solomon v. State*, 442 Md. 254, 287, 112 A.3d 408, 428 (2015) (citation omitted).

*Motor Vehicle Admin. v. Seenath*, 448 Md. 145, 181 (2016) (footnote omitted). *Accord Pizza di Joey v. Mayor and City Council of Baltimore*, 470 Md. 308, 361 (2020). "A facial challenge to a legislative Act is . . . the most difficult to mount successfully." *Whittington v. State*, 246 Md. App. 451, 471 (2020) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Generally, a vagueness challenge to a statute "is based on the application of the statute to the 'facts at hand.'" *Galloway*, 365 Md. at 616 (quoting *Bowers v. State*, 283 Md. 115, 122 (1978)). The Court of Appeals has explained, however, that a facial challenge is appropriate "when a statute threatens to chill constitutionally protected conduct (particularly conduct protected by the First Amendment)." *Pizza di Joey*, 470 Md.

at 362. [4] *Accord Ayers v. State*, 335 Md. 602, 624–25 (1994) (Where a "statute appears to impinge upon fundamental constitutional rights such as the First Amendment guarantees of free speech and assembly, the statute is tested for vagueness on its face because its indefiniteness may have a chilling effect on the exercise of First Amendment liberties."), *cert. denied*, 513 U.S. 1130 (1995). "This principle, in essence, is a rule of standing which allows a defendant to challenge the validity of a statute even though the statute as applied to the defendant is constitutional." *Id*. at 625.

Appellant contends that a facial challenge to the validity of the statute is warranted here because "the right to rear a child" is a "fundamental" right, and criminalizing neglectful conduct impinges on this right. "Typically, a facial challenge in which a party contends that a statute is void-for-vagueness arises out of a right under the First Amendment to the United States Constitution." *Seenath*, 448 Md. at 182. *Accord Hall*, 448 Md. at 342 (Hotten, J., dissenting) ("Outside of the First Amendment context, vagueness is generally considered 'as applied to the facts of the particular case.'").[5] The

---

[4] A facial challenge also is appropriate "when a plaintiff seeks pre-enforcement review of a statute because it is incapable of valid application," *Pizza di Joey v. Mayor and City Council of Baltimore*, 470 Md. 308, 362 (2020), which is not applicable here.

[5] Judge Hotten cited several other courts that expressly prohibited a facial attack on a statute based on vagueness absent First Amendment concerns. *Hall*, 448 Md. at 342 n.3 (Hotten, J., dissenting). *See*, *e.g.*, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1021 (8th Cir. 2012) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand."), *cert. denied*, 569 U.S. 974 (2013); *United States v. Other Med.*, 596 F.3d 677, 682 (9th Cir. 2010) (quoting *United States v. Kim*, 449 F.3d 933, 942 (9th Cir. 2006)) ("[V]agueness challenges to statutes that do not involve First Amendment violations must be examined as applied to the defendant."); *State v. Schriver*, 542 A.2d 686, 689 (Conn.

Court of Appeals, however, has addressed a facial challenge involving a vagueness claim in the context of a fundamental constitutional right other than one that the First Amendment protects. *Seenath*, 448 Md. at 183.

We need not resolve whether this case involves a fundamental right permitting a facial challenge. Taking a cue from *Galloway*, 365 Md. at 627, we conclude that "[w]hether [CR § 3-602.1] should be tested for vagueness on its face is immaterial; [CR § 3-602.1] survives the void-for-vagueness doctrine whether it is scrutinized using the agreed facts of the present case alone or employing the imagined facts of 'marginal cases.'" We hold that CR § 3-602.1, on its face and as applied to the facts of appellant's case, provides fair notice of the conduct that is prohibited, and it does not lead to arbitrary enforcement.

CR § 3-602.1 provides:

(a) *Definitions.* — (1) In this section the following words have the meanings indicated.

(2) "Family member" has the meaning stated in § 3-601 of this subtitle.

(3) "Household member" has the meaning stated in § 3-601 of this subtitle.

(4) "Mental injury" means the substantial impairment of a minor's mental or psychological ability to function.

(5)(i) "Neglect" means the intentional failure to provide necessary assistance and resources for the physical needs or mental health of a minor that creates a substantial risk of harm to the minor's physical health or a substantial risk of mental injury to the minor.

---

1988) ("For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its application to the facts at issue.").

(ii) "Neglect" does not include the failure to provide necessary assistance and resources for the physical needs or mental health of a minor when the failure is due solely to a lack of financial resources or homelessness.

(b) *Prohibition*. — A parent, family member, household member, or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not neglect the minor.

(c) *Penalty*. — A person who violates this section is guilty of the misdemeanor of child neglect and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $5,000 or both.

(d) *Sentence*. — A sentence imposed under this section shall be in addition to any other sentence imposed for a conviction arising from the same facts and circumstances unless the evidence required to prove each crime is substantially identical.

We begin our analysis by addressing the first consideration in a vagueness challenge, whether the statute provides notice of the conduct that is prohibited. Appellant contends that it does not provide such notice because it "fails to identify what conduct might qualify as neglect." In support, she asserts that the meaning of the phrases "necessary assistance and resources for the physical needs or mental health of a minor" and "substantial risk of harm to the health" of the minor are not clear.

As the Court of Appeals has explained, in assessing whether the statute provides fair notice, we look to whether the meaning of the words in the statute "can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, *if* they possess common and generally accepted meaning." *Galloway*, 365 Md. at 615. We also note that when, as here, a statute has a specific intent requirement, the concern that a statute is unconstitutionally vague may be "ameliorated." *Id.* at 633 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

18

In *Hall*, Judge Hotten concluded, and four other judges agreed, that "the meaning of the terms in [CR] § 3-602.1 could be fairly ascertained." *Hall*, 448 Md. at 344 (Hotten, J., dissenting). We agree.

CR § 3-602.1 criminalizes the "intentional failure to provide necessary assistance and resources." Noting that intent is frequently required in Maryland statutes, and can be satisfied where consequences could be foreseen, Judge Hotten stated:

> In light of the precedent interpreting "intent" in other criminal statutes, [Ms. Hall] would have been placed on notice that Crim. Law § 3-602.1 may be satisfied where a defendant could or should have foreseen that his or her conduct would probably result in the "failure to provide necessary assistance and resources for the physical needs of a minor. . . ." Crim. Law § 3–602.1(a)(5)(ii). This specific intent requirement weighs against a holding that Crim. Law § 3-602.1 punishes parents or caregivers without warning, *see Williams v. State*, 329 Md. 1, 9 (1992) ("'[T]he requirement of a specific intent to do a prohibited act . . . relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware.'") (quoting *Screws v. United States*, 325 U.S. 91, 101–02, 65 S. Ct. 1031, 1035 (1945) (plurality opinion)), and also distinguishes the present case from several out-of-state cases where child neglect statutes have been deemed unconstitutionally vague.

*Id.* at 344–45. We agree that the intent requirement weighs against a finding that the statute is unconstitutionally vague because it "insulates innocent parenting mistakes from criminal liability." *Id*. at 354.

With respect to appellant's argument that CR § 3-602.1 fails to adequately describe "physical needs" in the context of the phrase "intentional failure to provide necessary assistance and resources for the physical needs or mental health of a minor," Judge Hotten explained why this contention is without merit. She stated:

> [T]he term "physical needs," will determine "necessary assistance and resources" in a given case. The term "needs," when used as a noun, is defined

as the "physiological or psychological requirements for the well-being of an organism." M. WEBSTER'S NEW COLLEGIATE DICTIONARY 829 (11th ed. 2008). Thus, the term "physical needs" simply excludes the "psychological requirements," and includes basic requirements for physical well-being of a child, like shelter, safety, food, supervision, clothing, water or sanitation.

*Id.* at 346. Judge Hotten stated that this "common understanding of physical needs is confirmed" by the use of similar terms in other statutes, including CR § 3-604(a)(7)(i), neglect of a vulnerable adult, which prohibits the "intentional failure to provide necessary assistance and resources for the physical needs of the vulnerable adult." *Id.* at 347. The examples given in this statute, including food, clothing, toileting, essential medical treatment, shelter or supervision, "confirm the types of essentials that are encompassed by the common understanding of 'physical needs.'"[6] *Id.*

Additionally, as Judge Hotten explained, "the necessary assistance and resources for the physical needs of a minor" depends on the age and needs of the particular child, and there "is no constitutional problem with this fact-intensive standard." *Id.* at 352. The vagueness doctrine "is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that

---

[6] Similarly, neglect is defined in the Child in Need of Assistance statute, Maryland Code Ann., Courts and Judicial Proceedings Article § 3-801(s) (2013 Repl. Vol.). Judge Hotten noted that the definition of neglect in this statute included the "failure to give proper care and attention" to a child, a standard "more nebulous" than "necessary assistance and resources for the physical needs of the child," but it had never been held to be unconstitutional. *Hall*, 448 Md. at 351 (Hotten, J., dissenting).

20

certain kinds of conduct are prohibited." *Id*. (quoting *Eanes v. State*, 318 Md. 436, 459 (1990)).

Other courts, in rejecting vagueness challenges, similarly have noted that the type of conduct that is covered in neglect and child endangerment statutes "defies precise definition" because the "number and kind" of "situations where a child's life or health may be imperiled are infinite." *Campbell v. State*, 999 P.2d, 649, 658 (Wyo. 2000) (quoting *State v. Crowdell*, 451 N.W.2d 695, 699 (Neb. 1990)). Accordingly, statutes regulating the "relationship between parents or guardians . . . must necessarily provide some flexibility while at the same time effectuating the [S]tate policy of protecting children." *Id.* at 657 (quoting *Keser v. State*, 706 P.2d 263, 267 (Wyo. 1985)).

In *Campbell*, 999 P.2d at 658, the Supreme Court of Wyoming held that the word endanger in a statute, which prohibited a parent or custodian of a child from "[k]nowingly or with criminal negligence cause, permit or contribute to the endangering of the child's life or health by violating a duty of care, protection or support," was not unconstitutionally vague. *Id.* at 658. It explained that the statute was

> necessarily broad to achieve the legislative purpose of protecting children against conduct that exposes a minor child's life or health to danger or the peril of probable harm or loss. The statute is not unconstitutionally vague because it does not enumerate the kinds of prohibited conduct; it is sufficiently definite to give notice concerning the criminal conduct prohibited by the statute and does not violate the due process right to know what criminal conduct is proscribed.

*Id.*

Turning back to CR § 3-602.1, five judges of the Court of Appeals determined that, with respect to CR § 3-602.1, "a person of common intelligence need not guess at what is

21

necessary, or required, for the physical needs of the child under their supervision." *Hall*, 448 Md. at 352 (Hotten, J., dissenting). We agree.

With respect to appellant's argument that the statute is vague because it offers no guidance about the meaning of the phrase "substantial risk of harm," we are not persuaded. As Judge Hotten noted in *Hall*, the term "'substantial risk' has a commonly accepted meaning" and is found in many penal statutes. *Id.* (citing as examples CR § 3-204(a)(1), reckless endangerment; CR § 3-202, assault in the first degree; CR § 3-1001[(b)], threats to commit crimes of violence; and CR § 3-201(d), defining "serious physical injury" and "physical injury that . . . creates a substantial risk of death."). "Whether a substantial risk has been created involves 'an objective assessment of the degree of risk' created by the failure to provide necessary assistance and resources to the minor." *Id.* at 353 (quoting *Minor v. State*, 326 Md. 436, 442 (1992)). Accordingly, as Judge Hotten states:

> This construction of Crim. Law § 3-602.1—imposing a measure of objective reasonableness on the *actus reus* of "creation of a substantial risk"—allows a member of society to choose between lawful and unlawful conduct by adherence to a familiar standard of conduct. This standard also provides a safeguard against the use of hindsight to prosecute caregivers in scenarios where a minimum risk of harm materializes, notwithstanding the reasonableness of the caregiver's actions.

*Id.* at 352–53.

Other courts similarly have held that the term "substantial risk" does not render a child endangerment statute unconstitutionally vague. *See State v. Anspach*, 627 N.W.2d 227, 232 (Iowa 2001) (rejecting vagueness claim regarding endangerment statute prohibiting knowingly acting "in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety," stating that phrase "substantial

22

risk" is "defined in other contexts and enjoys a fairly ascertainable meaning"); *State v. Mahurin*, 799 S.W.2d 840, 842 (Mo. 1990) (Child endangerment statute was not unconstitutionally vague, even if reasonable persons could differ on whether particular conduct created a "substantial risk" to the well-being of child, because the words "substantial risk" have a "plain and ordinary meaning cognizable by person of ordinary intelligence."), *cert. denied*, 502 U.S. 825 (1991).

Based on this analysis of the statute as a whole, we hold that CR § 3-602.1 is not unconstitutionally vague on its face. The language of the statute alerts an ordinary person of the type of conduct prohibited and provides adequate standards for enforcement of the statute.

Moreover, we hold that the statute was not unconstitutionally vague as applied to appellant. Although appellant claims that she had "absolutely zero notice of what the Child Neglect Statute proscribes," the constitutional standard we apply is not whether appellant actually had such notice, but whether the "statute define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). We ask whether appellant "could have reasonably foreseen that [her] conduct was subject to the statute, and/or whether the statute led to arbitrary enforcement *based on the facts before the court*." *Hall*, 448 Md. at 342 (Hotten, J., dissenting). *Accord Ayers*, 335 Md. at 624; *Bowers*, 283 Md. at 121.

We conclude that a person of ordinary intelligence and experience in appellant's circumstances would have understood that CR § 3-602.1 prohibited her conduct. Appellant

fell asleep and failed to supervise the two-year-old in her care because she consumed heroin the night before and was suffering from withdrawal. After the child suffered a severe head injury while she had left the child unsupervised, she then failed to seek prompt emergency medical care for the child. A person of ordinary intelligence could understand that this conduct was encompassed by CR § 3-602.1, which prohibits the intentional failure of a caregiver "to provide necessary assistance . . . for the physical needs" of the child in a manner that "creates a substantial risk of harm to the [child's] physical health."

CR § 3-602.1 is not unconstitutionally void for vagueness, either facially or as applied to appellant. Accordingly, we affirm the judgment of the circuit court denying appellant's motion to dismiss on these grounds.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**